### In re BLACKBIRD.

(Circuit Court, E. D. Wisconsin. March 15, 1895.)

HABEAS CORPUS—CONFLICTING STATE AND FEDERAL JURISDICTION—INDIANS.
  Habeas corpus will not lie to release an Indian convicted and imprisoned under Laws 1885, c. 341, § 9 (23 Stat. 385), for assault with intent to kill, on the ground that he is entitled to be tried under the laws of the state of his residence, by virtue of Laws 1887, c. 119, § 6, declaring Indians, born within the United States, to whom lands have been allotted, to be citizens of the United States; such facts being matter of defense, and reviewable by writ of error.

Application by David Blackbird, an Indian, for a writ of habeas corpus.

Spooner, Sanborn & Kerr, for petitioner.
H. E. Briggs and J. H. M. Wigman, for the United States.

JENKINS, Circuit Judge. The petitioner was indicted in the district court of the United States for the Western district of

Wisconsin for an assault with intent to kill, committed within the limits of the Bad River Indian reservation, and in violation of section 9, c. 341, Laws 1885 (23 Stat. 385). This statute comprehends such an offense committed by an Indian only. The petitioner was, upon trial, convicted, and sentenced to confinement in the state's prison for the period of three years, and is now serving his sentence therein. He applies for a writ of habeas corpus to restore to him his liberty, insisting that his conviction was illegal, and that his liberty is unlawfully restrained. This contention is based upon the ground that while he is of Indian blood, and originally belonged to the Bad River band of Chippewa Indians, yet that at the time of the commission of the offense for which he was indicted, and at the time of the indictment and trial thereof, he was a citizen of the United States and of the state of Wisconsin; that under the treaty of September 30, 1854, between the United States and the Chippewa Indians of the La Point or Bad River band, of which he was born a member, he took an allotment of certain lands within the reservation, for which a patent issued to him on the 28th of December, 1885, which patent provides that he shall not sell, lease, or in any manner alienate the land so allotted without the consent of the president of the United States. Section 6 of chapter 119 of the Laws of 1887 (24 Stat. 390) provides—

"That every Indian born within the territorial limits of the United States to whom allotments shall have been made under the provisions of this act, or under any law or treaty, and every Indian born within the territorial limits of the United States who has voluntarily taken up within said limits his residence separate and apart from any tribe of Indians therein, and has adopted the habits of civilized life, is hereby declared to be a citizen of the United States, and is entitled to all the rights, privileges and immunities of such citizen, whether said Indian has been or not by birth or otherwise, a member of any tribe of Indians within the territorial limits of the United States, without in any manner impairing or otherwise affecting the right of any such Indian to tribal or any other property."

The petitioner claims that by virtue of this statute, and by reason of such allotment, he is a citizen of the United States, and, by reason of his residence within the state of Wisconsin, that he is a resident and elector of that state, and is not subject to the provisions of the act under which he was indicted; that he can only be held for the act charged to the laws of the state of Wisconsin, and thereunder is entitled to be tried therefor by a jury of the county in which the alleged offense was committed; and that the United States district court for the Western district of Wisconsin was without jurisdiction to try him for the alleged offense.

The indictment aptly charged the statutory offense to have been committed by the petitioner within the district and within the limits of an Indian reservation, and that the petitioner was an Indian of a Chippewa tribe, and was at the time of the commission of the offense under the charge of an Indian agent and superintendent of the United States. The interesting question sought to be raised by this application is this: The government of the United States, in furtherance of its attempt to civilize the Indians, has seen fit to confer upon them the title in severalty to the lands held in

trust by the United States for the various tribes, with a view to induce them to take upon themselves the life and habits of civilization. This title has not been conferred, however, with absolute right of disposition. The Indian can neither sell, lease, nor otherwise dispose of the land. By some of the acts or treaties this inability of disposition is restricted to a period of time, ordinarily 25 years; and in other cases, as here, he is not allowed to dispose of the property without the consent of the president. The right of inheritance by his children is recognized. As a further incentive to the adoption of civilized life, the Indian to whom such allotment is made is clothed with citizenship. The government has not construed these provisions of the law as removing its wardship over the Indian, and claims that the tribal relation still remains. The government still continues to them the payment of treaty money, and supervision over them by means of a superintendent or agent resident within the reservation. It is insisted for the petitioner that the conferring of citizenship removes the Indian upon whom such citizenship has been conferred from the application of laws governing the Indian tribes, and that the petitioner, by virtue of his citizenship, stands before the law as any other citizen of the United States and of a state governed by no other or different law than that to which a white citizen is amenable. The question is not only one of interest, but is far-reaching in its results; for, if the contention of the petitioner be correct, the entire supervision and government of Indians to whom allotments have been made is done away with, and all such Indians are incorporated into the body of the people, and are no longer under that separate system of government which was deemed necessary to their peculiar condition. The question, by reason of its importance, should receive solution by the final and authoritative determination of the supreme court. No decision of the matter by me would set the matter at rest, and, for reasons about to be stated, I find no occasion to express any opinion upon the question.

The general principle is well settled that upon the hearing of an application for a writ of habeas corpus the question at issue is whether the prisoner is held without jurisdiction, and that the function of the writ is not to correct errors. In re Chapman, 15 Sup. Ct. 331, and cases cited, and Andrews v. Swartz, 15 Sup. Ct. 389 (both decided February 4, 1895, not yet officially reported). It is there held, following many cases of the supreme court, that ordinarily the writ will not lie where there is a remedy by writ of error or appeal. Here the indictment showed an offense committed within the purview of the statute, and by one to whom the statute applies. The district court for the Western district of Wisconsin has jurisdiction of the offense, and jurisdiction of the person of the petitioner. If the facts asserted by him are availing to take his case from without the general law respecting Indians occupying tribal relations, such facts would constitute a good defense to the charge brought against him, but those facts do not affect the jurisdiction of the district court to try him for the offense charged. They are matter of defense to the charge, and do not go to the

jurisdiction of the court. Indeed, it was confessed at the argument that the same questions that have been here urged were presented to the trial court in defense of the petitioner, and his claim was overruled. He therefore had a remedy by writ of error from the supreme court to the court by which he was tried. It is true that in rare and exceptional cases the writ may issue, although the remedy by writ of error exists. It has been held by the supreme court, however, that it is the better way to pursue the ordinary remedies afforded by the law. I do not think this to be an exceptional case in which a writ should issue, notwithstanding his remedy by writ of error is complete. This is peculiarly so because, by a writ of error, the grave and interesting question of the status of the Indian to whom allotment has been made can, through such writ of error, receive solution at the hands of the ultimate tribunal. The petition for a writ will be overruled.