332 U.S. 174 (1947)
SUNAL
v.
LARGE, SUPERINTENDENT, FEDERAL PRISON CAMP.
No. 535.
Supreme Court of United States.
Argued April 1, 1947.
Decided June 23, 1947.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.[*]
*175 Irving S. Shapiro argued the cause for petitioner in No. 840 and respondent in No. 535. With him on the briefs were Acting Solicitor General Washington and Robert S. Erdahl. Frederick Bernays Wiener was also on the brief in No. 840.
Hayden C. Covington argued the cause and filed briefs for respondent in No. 840 and petitioner in No. 535.
MR. JUSTICE DOUGLAS delivered the opinion of the Court.
Sunal and Kulick registered under the Selective Training and Service Act of 1940, 54 Stat. 885, 57 Stat. 597, 50 U.S.C. App. § 301, et seq. Each is a Jehovah's Witness and each claimed the exemption granted by Congress to regular or duly ordained ministers of religion.[1] § 5 (d). The local boards, after proceedings unnecessary to relate here, denied the claimed exemptions and classified these registrants as I-A. They exhausted their administrative remedies but were unable to effect a change in their classifications. *176 Thereafter they were ordered to report for induction  Sunal on October 25, 1944, Kulick on November 9, 1944. Each reported but refused to submit to induction. Each was thereupon indicted, tried and convicted under § 11 of the Act for refusing to submit to induction. Sunal was sentenced on March 22, 1945, Kulick on May 7, 1945, each to imprisonment for a term of years. Neither appealed.
At the trial each offered evidence to show that his selective service classification was invalid. The trial courts held, however, that such evidence was inadmissible, that the classification was final and not open to attack in the criminal trial. On February 4, 1946, we decided Estep v. United States and Smith v. United States, 327 U.S. 114. These cases[2] held on comparable facts that a registrant, who had exhausted his administrative remedies and thus obviated the rule of Falbo v. United States, 320 U.S. 549, was entitled, when tried under § 11, to defend on the ground that his local board exceeded its jurisdiction in making the classification  for example, that it had no basis in fact. 327 U.S. pp. 122-123.
It is plain, therefore, that the trial courts erred in denying Sunal and Kulick the defense which they tendered. Shortly after the Estep and Smith cases were decided, petitions for writs of habeas corpus were filed on behalf of Sunal and Kulick. In each case it was held that habeas corpus was an available remedy. In Sunal's case the Circuit Court of Appeals for the Fourth Circuit held that there was a basis in fact for the classification and affirmed a judgment discharging the writ. 157 F.2d 165. *177 In Kulick's case the Circuit Court of Appeals for the Second Circuit reversed a District Court holding that there was evidence to support the classification, 66 F. Supp. 183, and ruled, without examining the evidence, that since Kulick had been deprived of the defense he should be discharged from custody without prejudice to further prosecution. 157 F.2d 811. The cases are here on petitions for writs of certiorari, which we granted because of the importance of the questions presented.
The normal and customary method of correcting errors of the trial is by appeal. Appeals could have been taken in these cases,[3] but they were not. It cannot be said that absence of counsel made the appeals unavailable as a practical matter. See Johnson v. Zerbst, 304 U.S. 458, 467. Defendants had counsel. Nor was there any other barrier to the perfection of their appeals. Cf. Cochran v. Kansas, 316 U.S. 255. Moreover, this is not a situation where the facts relied on were dehors the record and therefore not open to consideration and review on appeal. See Waley v. Johnston, 316 U.S. 101, 104; United States ex rel. McCann v. Adams, 320 U.S. 220, 221. And see Adams v. United States ex rel. McCann, 317 U.S. 269, 274-275. The error was of record in each case. It is said, however, that the failure to appeal was excusable, since under the decisions as they then stood  March 22, 1945, and May 7, 1945  the lower courts had consistently ruled that the selective service classification could not be attacked in a prosecution under § 11. See Estep v. United States, supra, p. 123, n. 15. It is also pointed out that on April 30, 1945, we had denied certiorari in a case which sought to raise the same *178 point,[4] and that Estep v. United States, supra, and Smith v. United States, supra, were brought here[5] and decided after Sunal's and Kulick's time for appeal had passed. The argument is that since the state of the law made the appeals seem futile, it would be unfair to those registrants to conclude them by their failure to appeal.
We put to one side comparable problems respecting the use of habeas corpus in the federal courts to challenge convictions obtained in the state courts. See New York v. Eno, 155 U.S. 89; Tinsley v. Anderson, 171 U.S. 101, 104-105; United States ex rel. Kennedy v. Tyler, 269 U.S. 13; Ex parte Hawk, 321 U.S. 114, 116-117. So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal. Adams v. United States ex rel. McCann, supra, p. 274. There have been, however, some exceptions. That is to say, the writ has at times been entertained either without consideration of the adequacy of relief by the appellate route or where an appeal would have afforded an adequate remedy. Illustrative are those instances where the conviction was under a federal statute alleged to be unconstitutional,[6] where there was a conviction by a federal court whose jurisdiction over the person or the offense was challenged,[7] where the trial or sentence by a federal court violated *179 specific constitutional guaranties.[8] It is plain, however, that the writ is not designed for collateral review of errors of law committed by the trial court  the existence of any evidence to support the conviction,[9] irregularities in the grand jury procedure,[10] departure from a statutory grant of time in which to prepare for trial,[11] and other errors in trial procedure which do not cross the jurisdictional line. Cf. Craig v. Hecht, 263 U.S. 255.
Yet the latter rule is not an absolute one; and the situations in which habeas corpus has done service for an appeal are the exceptions. Thus where the jurisdiction of the federal court which tried the case is challenged or where the constitutionality of the federal statute under which conviction was had is attacked. habeas corpus is increasingly denied in case an appellate procedure was available for correction of the error.[12] Yet, on the other hand, where the error was flagrant and there was no other remedy available for its correction, relief by habeas corpus has sometimes been granted.[13] As stated by Chief Justice *180 Hughes in Bowen v. Johnston, 306 U.S. 19, 27, the rule which requires resort to appellate procedure for the correction of errors "is not one defining power but one which relates to the appropriate exercise of power." That rule is, therefore, "not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Id. p. 27. That case was deemed to involve "exceptional circumstances" by reason of the fact that it indicated "a conflict between state and federal authorities on a question of law involving concerns of large importance affecting their respective jurisdictions." Id. p. 27. The Court accordingly entertained the writ to examine into the jurisdiction of the court to render the judgment of conviction.
The same course was followed in Ex parte Hudgings, 249 U.S. 378, where petitioner was adjudged guilty of contempt for committing perjury. The Court did not require the petitioner to pursue any appellate route but issued an original writ and discharged him, holding that perjury without more was not punishable as a contempt. That situation was deemed exceptional in view of "the nature of the case, of the relation which the question which it involves bears generally to the power and duty of courts in the performance of their functions, of the dangerous effect on the liberty of the citizen when called upon as a witness in a court which might result if the erroneous doctrine upon which the order under review was based were not promptly corrected. . . ." Id. p. 384. Cf. Craig v. Hecht, supra.
The Circuit Courts of Appeals thought that the facts of the present cases likewise presented exceptional circumstances *181 which justified resort to habeas corpus though no appeals were taken. In their view the failure to appeal was excusable, since relief by that route seemed quite futile.
But denial of certiorari by this Court in the earlier case imported no expression of opinion on the merits. House v. Mayo, 324 U.S. 42, 48, and cases cited. The same chief counsel represented the defendants in the present cases and those in the Estep and Smith cases. At the time these defendants were convicted the Estep and Smith cases were pending before the appellate courts. The petition in the Smith case was, indeed, filed here about two weeks before Kulick's conviction and about a month after Sunal's conviction. The same road was open to Sunal and Kulick as the one Smith and Estep took. Why the legal strategy counseled taking appeals in the Smith and Estep cases and not in these we do not know. Perhaps it was based on the facts of these two cases. For the question of law had not been decided by the Court; and counsel was pressing for a decision here. The case, therefore, is not one where the law was changed after the time for appeal had expired. Cf. Warring v. Colpoys, 122 F.2d 642. It is rather a situation where at the time of the convictions the definitive ruling on the question of law had not crystallized. Of course, if Sunal and Kulick had pursued the appellate course and failed, their cases would be quite different. But since they chose not to pursue the remedy which they had, we do not think they should now be allowed to justify their failure by saying they deemed any appeal futile.
We are dealing here with a problem which has radiations far beyond the present cases. The courts which tried the defendants had jurisdiction over their persons and over the offense. They committed an error of law in excluding the defense which was tendered. That error did not go to the jurisdiction of the trial court. Congress, *182 moreover, has provided a regular, orderly method for correction of all such errors by granting an appeal to the Circuit Court of Appeals and by vesting us with certiorari jurisdiction. It is not uncommon after a trial is ended and the time for appeal has passed to discover that a shift in the law or the impact of a new decision has given increased relevance to a point made at the trial but not pursued on appeal. Cf. Warring v. Colpoys, supra. If in such circumstances, habeas corpus could be used to correct the error, the writ would become a delayed motion for a new trial, renewed from time to time as the legal climate changed. Error which was not deemed sufficiently adequate to warrant an appeal would acquire new implications. Every error is potentially reversible error; and many rulings of the trial court spell the difference between conviction and acquittal. If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by habeas corpus, litigation in these criminal cases will be interminable. Wise judicial administration of the federal courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants not involve the jurisdiction of the trial court.
An endeavor is made to magnify the error in these trials to constitutional proportions by asserting that the refusal of the proffered evidence robbed the trial of vitality by depriving defendants of their only real defense. But as much might be said of many rulings during a criminal trial. Defendants received throughout an opportunity to be heard and enjoyed all procedural guaranties granted by the Constitution. Error in ruling on the question of law did not infect the trial with lack of procedural due process. As stated by Mr. Justice Cardozo in Escoe v. Zerbst, 295 U.S. 490, 494, "When a hearing is allowed but there is error in conducting it or in limiting its scope the remedy is by appeal. *183 When an opportunity to be heard is denied altogether, the ensuing mandate of the court is void, and the prisoner confined thereunder may have recourse to habeas corpus to put an end to the restraint."
It is said that the contrary position was indicated by the following statement in Estep v. United States, supra, pp. 124-125,
"But if we now hold that a registrant could not defend at his trial on the ground that the local board had no jurisdiction in the premises, it would seem that the way would then be open to him to challenge the jurisdiction of the local board after conviction by habeas corpus. The court would then be sending men to jail today when it was apparent that they would have to be released tomorrow."
We were there examining the alternative pressed on us  that the classification could not be attacked at the trial. If we denied the defense, we concluded that habeas corpus would lie the moment after conviction. For one convicted of violating an illegal order of a selective service board, like one convicted of violating an unconstitutional statute, should be afforded an opportunity at some stage to establish the fact. And where no other opportunity existed, habeas corpus would be the appropriate remedy.[14] But that was an additional reason for allowing the defense in the criminal trial, not a statement that defendants prosecuted under § 11 had an alternative of defending at the trial on the basis of an illegal classification or resorting to habeas corpus after conviction. These registrants had available a method of obtaining the right to defend their prosecutions under § 11 on that ground. They did not use *184 it. And since we find no exceptional circumstances which excuse their failure, habeas corpus may not now be used as a substitute.
Accordingly Sunal v. Large will be affirmed and Alexander v. Kulick will be reversed.
So ordered.
MR. JUSTICE BURTON concurs in the result.
MR. JUSTICE FRANKFURTER, dissenting.
That habeas corpus cannot be made to do service for an appeal is a well-worn formula. But this generalization should not dispose of these two cases, if their actualities are viewed in the light of our decisions.
The First Judiciary Act empowered the courts of the United States to issue writs of habeas corpus. Section 14 of the Act of September 24, 1789, 1 Stat. 73, 81. Since the scope of the writ was not defined by Congress, it carried its common law implications. The writ was greatly enlarged after the Civil War by the Act of February 5, 1867. 14 Stat. 385. (For legislation dealing with habeas corpus see note in 18 F. 68.) It was no longer limited to searching the face of a judgment of a court of competent jurisdiction. It was available to cut through forms and go "to the very tissue of the structure," Mr. Justice Holmes in Frank v. Mangum, 237 U.S. 309, 345, 346, though it was certainly not to be invoked merely as a substitute for an available appeal. But what is "form" and what is the "tissue of the structure," and when is a writ sought in fact as a substitute for an appeal in a practical view of the administration of justice, are questions to which our decisions give dubious and confused answers. I think it is fair to say that the scope of habeas corpus in the federal courts is an untidy area of our law that calls for much more systematic consideration than it has thus far received.
*185 The extent to which this Court has left itself unhampered, by not drawing sharp jurisdictional lines, is indicated by the following very tentative classification of categories in which habeas corpus has not been deemed beyond the power of federal courts to entertain:
(1) Conviction by a federal court which had no jurisdiction either over the person or of the offense. See Ex parte Watkins, 3 Pet. 193, 203; Ex parte Parks, 93 U.S. 18, 23. But the writ is discretionary and may not issue even though if an opportunity were allowed such want of jurisdiction might be established. See Toy Toy v. Hopkins, 212 U.S. 542, and Rodman v. Pothier, 264 U.S. 399. And compare In re Mayfield, 141 U.S. 107, with In re Blackbird, 66 F. 541.
(2) Conviction under unconstitutional statute. Ex parte Virginia, 100 U.S. 339, 343; Ex parte Siebold, 100 U.S. 371; Ex parte Curtis, 106 U.S. 371; Ex parte Yarbrough, 110 U.S. 651. The writ was denied in each case, but the Court passed on the constitutionality of the statute. Here too the availability of the writ will depend on the circumstances of the case, particularly the stage in the criminal proceedings at which the writ is sought. Johnson v. Hoy, 227 U.S. 245; Henry v. Henkel, 235 U.S. 219. Compare Glasgow v. Moyer, 225 U.S. 420, with Matter of Gregory, 219 U.S. 210. See also In re Lincoln, 202 U.S. 178.
(3) Violation by federal courts of specific constitutional rights: (a) double jeopardy. Compare Ex parte Bigelow, 113 U.S. 328, with In re Snow, 120 U.S. 274, and Nielsen, Petitioner, 131 U.S. 176; (b) self-incrimination. Writ granted as to a witness held in contempt, though apparently not as to a defendant restrained on charge of crime. Compare Counselman v. Hitchcock, 142 U.S. 547, and Ex parte Irvine, 74 F. 954 (Taft, Circuit Judge), with Matter of Moran, 203 U.S. 96; (c) no indictment by *186 grand jury. Ex parte Wilson, 114 U.S. 417. Also Ex parte Bain, 121 U.S. 1. As to denial of constitutional rights in State courts, Moore v. Dempsey, 261 U.S. 86.
(4) Due regard for harmonious Nation-State relations, need to avoid friction and maintain balance. See Ex parte Rowland, 104 U.S. 604; In re Ayers, 123 U.S. 443; In re Sawyer, 124 U.S. 200; Bowen v. Johnston, 306 U.S. 19. Compare In re Tyler, 149 U.S. 164; In re Swan, 150 U.S. 637; Ex parte Young, 209 U.S. 123. Availability of other remedies is here an important factor. Similarly as to State interference with federal officers, prompt relief may be deemed necessary. Ohio v. Thomas, 173 U.S. 276. See also In re Neagle, 135 U.S. 1; Hunter v. Wood, 209 U.S. 205.
(5) Insufficiency of indictments is not open on habeas corpus; it may be in removal cases, in view of the hardship to the individual and the inadequacy of other remedies. Compare Tinsley v. Treat, 205 U.S. 20; also Hyde v. Shine, 199 U.S. 62. Compare also the extradition cases. Benson v. McMahon, 127 U.S. 457; Ornelas v. Ruiz, 161 U.S. 502; Bryant v. United States, 167 U.S. 104.
(6) Defects in jury panel, in trial procedure, exclusion or insufficiency of evidence, are rarely held ground for relief on habeas corpus. But when no other remedy was available and the error appeared flagrant, there have been instances of relief. See Tinsley v. Treat, 205 U.S. 20. Compare Ex parte Bain, 121 U.S. 1.
(7) Legality of sentence or conditions of confinement. Ex parte Lange, 18 Wall. 163. In re Bonner, 151 U.S. 242.
(8) Contempt cases. Ex parte Hudgings, 249 U.S. 378, 384. Compare, Savin, Petitioner, 131 U.S. 267, and Cuddy, Petitioner, 131 U.S. 280. But when appeal is sufficient remedy, see Craig v. Hecht, 263 U.S. 255, and *187 Judge Learned Hand's dissenting opinion in the Craig case, 282 F. 138, 155.
Perhaps it is well that a writ the historic purpose of which is to furnish "a swift and imperative remedy in all cases of illegal restraint," see Lord Birkenhead, L.C., Secretary of State for Home Affairs v. O'Brien, [1923] A.C. 603, 609, should be left fluid and free from the definiteness appropriate to ordinary jurisdictional doctrines. But if we are to leave the law pertaining to habeas corpus in the unsystematized condition in which we find it, then I believe it is true of both cases what Judge Learned Hand said of the Kulick case, that the writ is necessary "to prevent a complete miscarriage of justice." 157 F.2d 811, 813. If the justification need be no more definite than the existence of "exceptional circumstances," Bowen v. Johnston, 306 U.S. 19, 27, the reasons for allowing the writs in these cases are more compelling than were those in Bowen v. Johnston, where there merely appeared "to be uncertainty and confusion . . . whether offenses within the . . . National Park are triable in the state or federal courts." For the reasons set forth in Judge Hand's opinion, it "would pass all fair demands upon Kulick's diligence to conclude him because of his failure to appeal." 157 F.2d at 813.
I agree with both Circuit Courts of Appeals that habeas corpus was available as a remedy in the circumstances of these cases, but since the Court does not consider the merits, I shall abstain from doing so.
MR. JUSTICE RUTLEDGE, dissenting.
I am in agreement with MR. JUSTICE FRANKFURTER in the result and substantially in the views he expresses. I would modify them by making definite and certain his tentatively expressed conclusion that the great writ of habeas corpus should not be confined by rigidities characterizing *188 ordinary jurisdictional doctrines. And I agree with Judge Learned Hand, in the view stated for the Circuit Court of Appeals in Kulick's case, that upon the sum of our decisions,[1] regardless of the variety of statement in the opinions, no more definite rule is to be drawn out than that "the writ is available, not only to determine points of jurisdiction, strict juris, and constitutional questions; but whenever else resort to it is necessary to prevent a complete miscarriage of justice." 157 F.2d 811, 813.
In my opinion not only is this the law, measured by the sum of the decisions and the applicable statute,[2] but the aggregate of the results demonstrates it should be the law.
Confusion in the opinions there is, in quantity. But it arises in part from the effort to pin down what by its nature cannot be confined in special, all-inclusive categories, unless the office of the writ is to be diluted or destroyed where that should not happen. And so limitation in assertion gives way to the necessity for achieving the writ's historic purpose when the two collide. Admirable as may be the effort toward system, *189 this last resort for human liberty cannot yield when the choice is between tolerating its wrongful deprivation and maintaining the systematist's art.
The writ should be available whenever there clearly has been a fundamental miscarriage of justice for which no other adequate remedy is presently available. Beside executing its great object, which is the preservation of personal liberty and assurance against its wrongful deprivation, considerations of economy of judicial time and procedures, important as they undoubtedly are, become comparatively insignificant.[3] This applies to situations involving the past existence of a remedy presently foreclosed, as well as to others where no such remedy has ever been afforded.
In the prevailing state of our criminal law, federal and state, there are few errors, either fundamental or of lesser gravity, which cannot be corrected by appeal timely taken, unless the facts disclosing or constituting them arise after the time has expired. If the existence of a remedy by appeal at some stage of the criminal proceedings is to be taken for the criterion, then in very few instances, far less than the number comprehended by our decisions, will the writ be available. Taken literally, the formula so often repeated, that the writ is not a substitute for appeal, is thus in conflict with every case where the ground upon which the writ has been allowed either was or might have been asserted on appeal.[4] *190 The formula has obvious validity in the sense that the writ is not readily to be used for overturning determinations made on appeal or for securing review where no specification has been made or no appeal has been taken of matters not going to make the conviction a gross miscarriage of justice.
But any effort to shut off the writ's functioning merely because appeal has not been taken in a situation where, but for that fact alone, the writ would issue, seems to me to prescribe a system of forfeitures in the last area where such a system should prevail. Certainly a basic miscarriage of justice is no less great or harmful, either to the individual or to the general cause of personal liberty, merely because appeal has not been taken, than where appeal is taken but relief is wrongfully denied.
These considerations apply with special force, though not exclusively, where good reason existed, as I think did here, for failure to note the appeal in the brief time *191 allowed.[5] Whether or not the inferior federal courts were justified in taking the Falbo decision[6] for more than its specific ruling, the fact remains that their broadly prevailing view was that that case had cut off all right to make such defenses as Sunal and Kulick tendered.[7]
*192 In that prevailing climate of opinion in those courts, there was hardly any chance that appeal to the federal circuit courts of appeals would bring relief by their action.[8] The chances for reversal therefore hung almost exclusively upon the doubtful, not to say slender,[9] chance that this Court in the exercise of its discretionary power would grant certiorari.
The deprivation here was of the right to make any substantial defense.[10] I do not think a trial which forecloses the basic right to defend, upon the only valid ground available for that purpose, is any less unfair or conclusive as against the office of habeas corpus than one which takes place when the court is without jurisdiction to try the offense, as when the charge is made under an unconstitutional statute or for other reason sets forth no lawfully prescribed offense, or when the court loses jurisdiction by depriving the accused of his *193 constitutional right to counsel. That right is no more and no less than an important segment of the right to have any valid defense advanced and considered. It becomes almost meaningless if the larger right to defend is itself cut off.[11]
With MR. JUSTICE FRANKFURTER, since the Court reaches only the question of the availability of habeas corpus, I do not consider others.
MR. JUSTICE MURPHY joins in this dissent. He believes that today's decision unduly narrows the point at which due process may be accorded those accused or convicted of violating the Selective Training and Service Act of 1940. Cf. his dissenting opinion in Falbo v. United States, 320 U.S. 549, 555, and his concurring opinion in Estep v. United States, 327 U.S. 114, 125.
NOTES
[*] Together with No. 840, Alexander, Warden, v. United States ex rel. Kulick, on certiorari to the Circuit Court of Appeals for the Second Circuit.
[1] Sunal in 1942 was classified as a conscientious objector and ordered to report for work of national importance. On his failure to do so he was convicted under the Act and a fine and term of imprisonment were imposed. The events with which we are now concerned relate to his classification after his discharge from prison.
[2] The Smith case was decided by the Circuit Court of Appeals on April 4, 1945, 148 F.2d 288; the petition for certiorari was filed April 25, 1945, and granted May 28, 1945. 325 U.S. 846. The Estep case was decided by the Circuit Court of Appeals on July 6, 1945, 150 F.2d 768; the petition for certiorari was filed August 3, 1945, and granted October 8, 1945. 326 U.S. 703.
[3] We therefore lay to one side cases such as Bridges v. Wixon, 326 U.S. 135, Duncan v. Kahanamoku, 327 U.S. 304, and Eagles v. United States ex rel. Samuels, 329 U.S. 304, where the order of the agency under which petitioner was detained was not subject to judicial review.
[4] Rinko v. United States, 325 U.S. 851. We also denied certiorari in Flakowicz v. United States, 325 U.S. 851; but it, like Falbo v. United States, supra, was one where the administrative remedies had not been exhausted, there being an additional examination which the registrant had not taken. See Gibson v. United States, 329 U.S. 338.
[5] See note 2, supra.
[6] Ex parte Siebold, 100 U.S. 371; Ex parte Curtis, 106 U.S. 371; Ex parte Yarbrough, 110 U.S. 651; In re Coy, 127 U.S. 731; Matter of Heff, 197 U.S. 488; Matter of Gregory, 219 U.S. 210; Baender v. Barnett, 255 U.S. 224.
[7] Ex parte Watkins, 3 Pet. 193; Ex parte Parks, 93 U.S. 18; Bowen v. Johnston, 306 U.S. 19.
[8] Ex parte Lange, 18 Wall. 163 (double jeopardy); In re Snow, 120 U.S. 274 (same); In re Nielsen, 131 U.S. 176 (same); Counselman v. Hitchcock, 142 U.S. 547 (self-incrimination); Ex parte Wilson, 114 U.S. 417 (requirement of indictment); Ex parte Bain, 121 U.S. 1 (same); Callan v. Wilson, 127 U.S. 540 (jury trial); Johnson v. Zerbst, supra (right to counsel); Walker v. Johnston, 312 U.S. 275 (same); Waley v. Johnston, supra (coerced plea of guilty).
[9] Harlan v. McGourin, 218 U.S. 442.
[10] Ex parte Harding, 120 U.S. 782; Kaizo v. Henry, 211 U.S. 146.
[11] McMicking v. Schields, 238 U.S. 99. The rule is even more strict where habeas corpus is sought before trial. See Johnson v. Hoy, 227 U.S. 245.
[12] In re Lincoln, 202 U.S. 178; Toy Toy v. Hopkins, 212 U.S. 542; Glasgow v. Moyer, 225 U.S. 420.
[13] Tinsley v. Treat, 205 U.S. 20 (removal case). In removal cases habeas corpus is available not to weigh the evidence to support the accusation but to determine whether there is an entire lack of evidence to support it. Hyde v. Shine, 199 U.S. 62, 84. It is also available to determine whether removal to the district in question violates a constitutional right of the accused, Haas v. Henkel, 216 U.S. 462, or whether the court before which it is proposed to take and try the accused has jurisdiction over the offense. Salinger v. Loisel, 265 U.S. 224. But habeas corpus will not be entertained to pass on the question of jurisdiction where it involves consideration of many facts and seriously controverted questions of law. Rodman v. Pothier, 264 U.S. 399; Henry v. Henkel, 235 U.S. 219.
[14] The remedy of habeas corpus extends to a case where a person "is in custody in violation of the Constitution or of a law . . . of the United States. . . ." R.S. § 753, 28 U.S.C. § 453.
[1] Including those cited in the Court's opinion and that of MR. JUSTICE FRANKFURTER. See also dissenting opinion, Ex parte Craig, 282 F. 138, 155-159, affirmed in Craig v. Hecht, 263 U.S. 255; The Writ of Habeas Corpus in the Federal Courts (1935) 35 Col. L. Rev. 404.
[2] Rev. Stat. § 761, 28 U.S.C. § 461, which commands the court, after hearing to "dispose of the party as law and justice require." Cf. Frank v. Mangum, 237 U.S. 309, 330, 331, and dissenting opinion of Mr. Justice Holmes, at 345 ff., concurred in by Mr. Justice Hughes, who afterward as Chief Justice wrote the Court's opinion in Bowen v. Johnston, 306 U.S. 19. See note 4. Pertinently the statute applies to prisoners "in custody in violation of the Constitution or of a law or treaty of the United States. . . ." Rev. Stat. § 753, 28 U.S.C. § 453.
[3] It is for this reason that the doctrine of res judicata does not apply to habeas corpus determinations, Waley v. Johnston, 316 U.S. 101, 105, although a prior refusal to discharge the prisoner on a like application may be given weight, Salinger v. Loisel, 265 U.S. 224, 231, for obvious reasons of judicial administration.
[4] In the following cases the Court either passed upon the substance of the contentions presented in the petition for writ of habeas corpus or held that the petitioner was entitled to a hearing, although, so far as appears, at the time the petition was filed the time to appeal had expired, e.g., Bowen v. Johnston, 306 U.S. 19; Walker v. Johnston, 312 U.S. 275; Johnson v. Zerbst, 304 U.S. 458, see The Writ of Habeas Corpus in the Federal Courts (1935) 35 Col. L. Rev. 404, 414, n. 66; an appeal had already been taken, Moore v. Dempsey, 261 U.S. 86; or the time to appeal had not expired, Hunter v. Wood, 209 U.S. 205; In re Sawyer, 124 U.S. 200; Wo Lee v. Hopkins, 118 U.S. 356, discussed in The Writ of Habeas Corpus in the Federal Courts, supra, at 414, n. 60. See also Appleyard v. Massachusetts, 203 U.S. 222, 225-226; Ex parte Bridges, 2 Woods 428, 430, approved in Ex parte Royall, 117 U.S. 241.

In his dissenting opinion in Ex parte Craig, supra note 1, Judge Learned Hand, reviewing the authorities, said: "The appellant's attempt rigidly to classify these exceptions appears to me more definite than the books warrant. A safer rule is to say somewhat vaguely that they must be occasions of pressing necessity." 282 F. at 156.
[5] The opinion of the Circuit Court of Appeals in the Kulick case, after stating the summarized effect of our decisions as quoted in the text above, said concerning this case: "The occasion at bar is such; certainly the reasons for allowing it are more compelling than were those in Bowen v. Johnston [see notes 3, 4, supra], where there merely appeared `to be uncertainty and confusion . . . whether offenses within' a national park `are triable in the state or federal courts.' It would pass all fair demands upon Kulick's diligence to conclude him because of his failure to appeal. Not only had there not been any glimmer of a positive chance of success, but there had been an unusual consensus of judicial opinion against it in the lower courts. Moreover, although a number of the decisions could be explained upon the ground that those inducted had not wholly exhausted their administrative remedies; in a number of others they had done so; and no distinction had been established between the two. Indeed, in United States v. Flakowicz, supra [146 F.2d 874], which had been one of these, the Supreme Court denied certiorari only a fortnight before May 12th," the date of Kulick's conviction. 157 F.2d at 813-814. See note 9 infra.
[6] Falbo v. United States, 320 U.S. 549. The opinion, though containing language emphasizing the failure of Congress to provide expressly for judicial review of selective service boards' classifications, explicitly pointed out that "a board order to report is no more than a necessary intermediate step in a united and continuous process designed to raise an army speedily and efficiently" and that, if there were a constitutional requirement for judicial review, "Congress was not required to provide for judicial intervention before final acceptance of an individual for national service." Pp. 553, 554. The opinion also stated: "Surely if Congress had intended to authorize interference with that process by intermediate challenges of orders to report, it would have said so." P. 554. (Emphasis added.)
[7] See note 5 supra, and the cases cited in MR. JUSTICE FRANKFURTER'S opinion in Estep v. United States, 327 U.S. 114, 139.
[8] In reference to Kulick's case the chance was practically nil, since the Circuit Court of Appeals for the Second Circuit previously had ruled the question adversely to the validity of the defenses in United States v. Flakowicz, 146 F.2d 874, and certiorari had been denied here. 325 U.S. 851. See note 5.

Smith v. United States, 148 F.2d 288, afterwards reversed here, 327 U.S. 114, apparently was the first in which the Circuit Court of Appeals for the Fourth Circuit decided the question. The decision was rendered April 4, 1945. Sunal was convicted on March 22, 1945.
[9] Although denial of certiorari is not to be taken as expression of opinion in any case, it would be idle to claim that it has no actual or reasonable influence upon the practical judgment of lawyers whether appeal should be noted and taken upon the chance that in a case substantially identical this Court's discretion would be exercised, in the absence of conflict, in a contrary manner at the stage of application for certiorari.
[10] Under the rule applied in the district courts and the circuit courts of appeals the only defenses open would have been that the defendants had not refused to take the oaths. No defense relating to the validity of the statute, the regulations, or their application in the particular cases was available.
[11] Cf. Yakus v. United States, 321 U.S. 414, dissenting opinion, at 460 ff.