**Ralph Dwayne OWEN,
Petitioner-Appellant,**

v.

**UNITED STATES of America,
Respondent-Appellee.**

No. 80–5465.

United States Court of Appeals,
Sixth Circuit.

Argued July 8, 1981.

Decided Oct. 1, 1981.

Ralph Dwayne Owen, pro se.

David E. Melcher, Cynthiana, Ky., (Court-appointed), for petitioner-appellant.

Patrick H. Molloy, U. S. Atty., James E. Arehart, Joe Famularo, Asst. U. S. Attys., Lexington, Ky., for respondent-appellee.

Before WEICK, LIVELY and JONES, Circuit Judges.

PER CURIAM.

Owen has appealed to this court from an order of the district court entered on October 28, 1980, approving and adopting its Magistrate's Report and dismissing Owen's motion filed under 28 U.S.C. § 2255 to vacate sentence on his pleas of guilty made more than fourteen years previously with the advice of his court appointed attorneys, to two counts of an indictment filed March 8, 1966, charging him and a confederate with committing armed bank robberies on November 23 and December 13, 1965, in violation of 18 U.S.C. § 2113(a) and (d). Owen was convicted on his guilty pleas and sentenced on May 11, 1966 to twenty years imprisonment on each count to be served concurrently and concurrent with sentences on convictions for other offenses one of which was a California sentence of five years to life. Owen did not appeal from his conviction and sentence for the two 1965 bank robberies on his pleas of guilty more than fourteen years ago and has resorted solely to his collateral attack on his armed bank robberies conviction in the present proceedings.

In appealing from the denial of his motion to vacate sentence, Owen asserts claims, which in our opinion, are not only stale but also frivolous, namely, that the district judge, in accepting his guilty pleas in 1966 did not comply with Rule 11 of the Federal Rules of Criminal Procedure with respect to determining whether his guilty pleas were voluntary; that the district court erred in not ordering a psychiatric examination which he had requested, but he withdrew the request on the following day when he entered his pleas of guilty; that the two attorneys appointed by the district court to represent him and his co-defendant did not render effective assistance. The appendix discloses clearly that both Owen and his confederate were not novices. They were hardened criminals serving long terms of imprisonment for other offenses, two of

which both had escaped when they committed the robberies in issue here.

Owen and his newly appointed attorney have offered no explanation as to why Owen did not appeal to this court from his 1966 bank robbery conviction and sentence on his guilty pleas. Had he taken a timely appeal to this court, he could have obtained redress on any meritorious claim and even an adjudication on his present claims which are not meritorious. We are not advised as to why it took Owen more than fourteen years to discover and then seek to collaterally redress the alleged errors of which he now complains.

The issues in the present appeal, in our opinion, are controlled by the decision of the Supreme Court in *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) in which Justice Stevens wrote the opinion for a unanimous court, and stated, *inter alia*:

In *Hill v. United States*, 368 U.S. 424, [82 S.Ct. 468, 7 L.Ed.2d 417], the Court was presented with the question whether a collateral attack under § 2255 could be predicated on a violation of Fed.Rule Crim.Proc. 32(a), which gives the defendant the right to make a statement on his own behalf before he is sentenced. The Court rejected the claim, stating:

"The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present 'exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.' *Bowen v. Johnston*, 306 U.S. 19, 27 [59 S.Ct. 442, 446, 83 L.Ed. 455]. See *Escoe v. Zerbst*, 295 U.S. 490 [55 S.Ct. 818, 79 L.Ed. 1566]; *Johnson v. Zerbst*, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461]; *Walker v. Johnston*, 312 U.S. 275 [61 S.Ct. 574, 85 L.Ed. 830]; *Waley v. Johnston*, 316 U.S. 101 [62 S.Ct. 964, 86 L.Ed. 1302]." 368 U.S., at 428 [82 S.Ct. at 471].

The reasoning in *Hill* is equally applicable to a formal violation of Rule 11. Such a violation is neither constitutional nor jurisdictional: the 1966 amendment to Rule 11 obviously could not amend the Constitution or limit the jurisdiction of the federal courts. Nor can any claim reasonably be made that the error here resulted in a "complete miscarriage of justice" or in a proceeding "inconsistent with the rudimentary demands of fair procedure." Respondent does not argue that he was actually unaware of the special parole term or that, if he had been properly advised by the trial judge, he would not have pleaded guilty. His only claim is of a technical violation of the rule. That claim could have been raised on direct appeal, see *McCarthy v. United States*, 394 U.S. 459 [89 S.Ct. 1166, 22 L.Ed.2d 418], but was not. And there is no basis here for allowing collateral attack "to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178 [67 S.Ct. 1588, 1590, 91 L.Ed. 1982].

Indeed, if anything, this case may be a stronger one for foreclosing collateral relief than the *Hill* case. For the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.

"Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea." *United States v. Smith* (7

Cir.), 440 F.2d 521, 528–529 (Stevens, J., dissenting).

### I

The arraignment, guilty pleas and sentence all took place over a period of two days, May 3 and May 4, 1966, and were conducted by the late Judge Mac Swinford, an able and experienced district judge for the Eastern District of Kentucky. At the request of the defendants, Judge Swinford appointed two able attorneys to represent them as they had no attorney and were indigent. There was no conflict of interest shown or even claimed. Defendant Gove stated that he was the aggressor and had persuaded Owen to join with him in the commission of some of the crimes. In the arraignment proceedings, the two attorneys for the defendants advised the court that both defendants would like to have the court appoint a psychiatrist to examine them. This led to considerable questioning by the court of the two defendants, their appointed attorneys and the United States Attorney as to the necessity therefor.

In the questioning, the court read to the defendants and the attorneys the pertinent provisions of 18 U.S.C. § 4244, relating to mental incompetency after arrest and before trial. The court then directed questions to the defendants and their attorneys asking whether they had reasonable cause to believe that the defendants or either of them may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or them or properly to assist in his or their own defense? Do you?

The United States attorney answered no. The two attorneys representing the defendants answered no. The court then questioned each of the defendants separately. With respect to Owen, the record discloses the following:

> MR. WEST: Your honor—they probably would like for me to ask the question that you have asked the attorneys; whether or not they feel they are mentally competent. They would like to be asked.

THE COURT: All right. Do either of you now at this time have reasonable cause—well, I will ask them separately. I'll ask Ralph Dwayne Owen. Ralph, do you have reasonable cause to believe that you, who are a person now charged with an offense against the United States, as set forth in this indictment—you know what that is, don't you, you have a copy of it?

THE DEFENDANT OWEN: Yes, I have.

THE COURT: —that is, charging you with committing this armed robbery, do you have any reasonable grounds to believe or cause to believe that you may be now insane or otherwise so mentally incompetent as to be unable to understand the proceeding against you or properly to assist in your own defense? Do you feel that your mind is of such a nature now that you couldn't—that you do not understand these charges and you are not mentally competent to assist your lawyers in your own defense?

THE DEFENDANT OWEN: I would like to talk to a psychiatrist. I feel that they would be—that it would be important to me as well as to the Court, because I was a patient at the California Medical Facility and there is times that I can't control myself, I know this, and I know that the Court would find this out. Just like the District Attorney says, all prisoners do go to California Medical Facility, but yet it is a divided unit and they go there for a period of about 90 days to evaluate them and at that time they are sent over to the other side where they are sent to another institution. And I was in patient status at the California Medical Facility, I found it hard to talk about my—the way I felt there—

THE COURT: Go ahead.

THE DEFENDANT OWEN: I don't know, I don't really know myself. I tried to explain to them what I went through at different times.

THE COURT: Well, I don't want to debate with you, you understand that. All my business is to try to give you a fair trial. That is what I want to do. The

question is, not whether or not at the time you committed the offense that you were under some mental stress or strain, or were so insane or under such a psychotic condition that you could not control yourself, as you say, and thereby might have that as a defense to this charge against you. That's not the question. The question now is, do you feel now presently, it says, that you are so mentally incompetent that you do not understand these charges against you and cannot adequately and purposefully and intelligently assist in your own defense? The question of insanity at the time an offense is committed is a defense, but that is not this question. Do you understand? Do you understand now this charge against you?

THE DEFENDANT OWEN: Yes.

THE COURT: Do you understand what you are charged with?

THE DEFENDANT OWEN: Yes.

THE COURT: This indictment?

THE DEFENDANT OWEN: Yes, Sir.

THE COURT: You are an intelligent man.

THE DEFENDANT OWEN: I know—

THE COURT: You appear to be. Do you understand the charges in this indictment? You have gone over it with your attorneys, haven't you?

THE DEFENDANT OWEN: Yes.

THE COURT: Do you feel that you have mind sufficient now to assist in your defense in presenting whatever your defense might be?

THE DEFENDANT OWEN: Yeah, I think so.

The court then questioned the defendant Gove who testified: "I only say that I think due to the fact that I did commit acts that were insane acts—I mean normal people don't do them—and which I committed from the time I escaped up until the time I was apprehended, that I think I would like to have—I don't know whether I'm competent to stand trial or not, because of the fact that I did commit these acts...."

The court stated:

THE COURT: I can commit you for 30 days to an institution and psychiatrists will examine you and determine whether or not you are now competent to understand these charges against you and to assist in your defense; or I can set the case down and permit you at the expense of the United States to employ a psychiatrist of your own, not one of the United States officers, but a psychiatrist of your own at the expense of the United States, to come here and make an examination or to have an examination, whatever it might be, and testify in your behalf, if the Court is of that opinion, not as to your present competence, but as to your competence at the time this alleged offense was committed? Do you see what I mean? Whether or not you were mentally incapable at that time is a defense of insanity.

Now, as I say, I can't practice your case for you. I have appointed these gentlemen. They are capable attorneys and I'm going to let you consult with them and see what you want to do. I want you to have everything the law allows you and I propose to see that you have it, but what we are to decide, gentlemen, is whether or not they are to be committed now to have another report and a hearing on their present mental competence or whether or not to continue the case, postpone it for a reasonable time, to let them employ a psychiatrist at government expense to testify as to whether or not they were insane at the time they committed the act within the meaning of the law, if they did commit the act. I'm not saying that they did or didn't. These boys appear to be very intelligent to me. I'm no psychiatrist, but I don't want them to temporaize [sic] with the Court. I don't want them to just delay this thing with the idea of postponing it, because it is just going to be hard on them to have to lie in jail, awaiting trial.

I don't suppose you can make bond, can you?

THE DEFENDANT GOVE: I'm already serving 23 years in the Atlanta Penitentiary.

THE COURT: You are already under sentence?

THE DEFENDANT GOVE: Yes, sir, at Atlanta Penitentiary.

(Reporter's note: Subsequently, on the same day, to wit, May 3, 1966, the defendants, having conferred further with counsel, came before the Court with their attorneys and the following occurred:)

THE COURT: Mr. West, have you discussed this? Ralph, you and Charles, have you discussed this with your attorneys again?

THE DEFENDANT GOVE: Yes, sir.

THE COURT: What would you like to do?

MR. WEST: We would like to waive formal arraignment for each of the defendants and enter a plea of not guilty.

MR. SCHMAEDECKE: To both counts, if Your Honor please, count 1 and count 2.

THE COURT: Waive formal arraignment to Count 1 and Count 2 for each defendant and enter a plea of not guilty.

\*   \*   \*   \*   \*   \*

Let the case be set down for trial, for the 21st day of September. That's the third day of the term. Set it down at this time. In the meantime you will have an opportunity to have psychiatric examination, both by a psychiatrist employed by the defendants and the United States' doctors.

Mr. Marshall, you can keep them here as best you can to give them an opportunity. Now Mr. West, I'm going to ask you to reduce this to a motion in writing if you will and bring it up here tomorrow. I'll be here tomorrow and you don't have to do it this afternoon; it's late, but if you will do it in the morning and bring it over here and let's get this down in a little more formal way. Consult the statute on it and see just—

MR. WEST: Your Honor, from what the marshal said, I didn't—how long are we going to have? I may be able to get Doctor Weldon and file this motion and I assume that the burden is upon us to hire a psychiatrist.

THE COURT: That's right. The United States will pay for it.

MR. WEST: That's right. But now Doctor Weldon may be filled up as far as his appointments are concerned. I have no idea.

THE COURT: I thought probably you could call him tomorrow or tonight, and find out.

MR. WEST: I will call him tonight or tomorrow morning.

THE COURT: You realize that it is not to these defendants' best interests to remain in jail here. The facilities are not to their best interests and it is better I am sure for them to be returned to federal prison than to be held here, if he can make his examination or if he can do that at this time, and then try to have them back here in this district within a reasonable time, some few days possibly before the trial, for any further checkup. That will be a matter that will address itself to him. He will understand that and as I say, I'm not assuming any responsibility to remind you, because I have a great many cases. I'll have to let you make any requests that you feel are appropriate.

Now, as far as staying here is concerned that will be a matter which the marshal said he will try to keep them here a few days. Just what that means, I don't know. I suggest you call Doctor Weldon and see just what time he could see them.

MR. SCHMAEDECKE: Should we contact the marshal's office?

THE COURT: Yes. The marshal will be here. He will be here tomorrow.

MR. SCHMAEDECKE: Thank you, Your Honor.

THE COURT: Thank you, gentlemen.

On the following day, namely, May 4, 1966, the defendants and their attorneys again appeared before the court and announced that they now desired to withdraw their not guilty plea and enter pleas of guilty on both counts. The court addressed both defendants stating that "We went over this pretty thoroughly yesterday and I

assume you have discussed it pretty thoroughly with your attorneys."

Addressing Owen, the court inquired:

Now, as to the defendant Owen—

MR. WEST: Your Honor, Mr. Owen has also talked to both of us about this case and would like to withdraw his plea of not guilty to both counts of the indictment and ask leave of the Court to enter a plea of guilty to both counts.

THE COURT: Now, Mr. West, you were appointed to represent both of these defendants.

MR. WEST: Yes, sir.

THE COURT: I am just trying to keep the record straight on this, in order that the record will show that each of these defendants had two attorneys and there was not a division.

Ralph, you have heard the statement of Mr. West. Is that your desire to withdraw your plea of not guilty and enter a plea of guilty?

THE DEFENDANT OWEN: Yes, Your Honor.

THE COURT: You recall distinctly, I am sure, our discussion here yesterday and the Court explained to you and to your co-defendant your rights in the matter?

THE DEFENDANT OWEN: Yes, Your Honor.

THE COURT: All right.

\* \* \* \* \* \*

THE COURT: All right, Ralph, I'll listen to you.

Now, you realize there are two cases involved here, one is charged on the 23rd of November and the other on the 13th of December to which you have entered pleas of guilty? You understand that, don't you?

THE DEFENDANT OWEN: Yes, Your Honor.

THE COURT: There are two different bank robberies involved, both of which involve the use of a deadly weapon, is that right?

THE DEFENDANT OWEN: Yes, Your Honor.

THE COURT: All right. I'll hear you now if you have anything you want to say.

THE DEFENDANT OWEN: Well, I know that I have done a lot of wrong. In fact, I have been doing wrong for a long time, but I do feel that I can make a good life for myself out in the free world and I met this—well, I met my wife and she did an awful lot for me. She did change my life, she changed my ways, she understood and helped me a lot and I would—I don't know—I'm sorry for what I did and I know that I've got a lot of time to do, but I know I can make it when I do get out and make a useful life for myself and my wife.

THE COURT: All right. Thank you.

In sentencing the defendants, the court said:

THE COURT: All right, let the defendants come up, please.

Each of you has a very long and serious criminal record, involving crimes of violence, and yet it is important that the Court tell you that there is always an opportunity for parole in the event the parole board should determine that it would be justified; that is, after you have served a third of your sentence you may be eligible for parole. I do not want to commit the Court to any statement that might mislead you. I realize and you realize, I am sure, each of you, that your past records might stand somewhat in your way in that connection. I want to be fair with you and I am sure that you each realize that because you have each been in prison on numerous occasions for various things, Is that not correct?

THE DEFENDANT OWEN: Yes.

THE COURT: The Court could sentence you here to as much as 50 years, each of you, on these charges to which you have entered pleas of guilty.

Do you still—are you serving a prison sentence at this time?

THE DEFENDANT OWEN: Yes, I believe so.

THE COURT: What is that amount of years? Do you know?

THE DEFENDANT OWEN: Five to life.

THE COURT: Five to life?

THE DEFENDANT OWEN: Yes.

THE COURT: I'm going to sentence each of you to 20 years in the penitentiary on each count of this indictment, those sentences to run concurrent and to run concurrent with any sentences which you are now serving. I feel that that's fair under all of the circumstances.

The record does not disclose whether Gove appealed.

It clearly appears from the record that Judge Swinford fully complied with the test of a defendant's competency to stand trial on a criminal charge decided by the Supreme Court in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), which we followed in *Pate v. Smith*, 637 F.2d 1068, 1070 (6th Cir. 1981). From the answers to the questions propounded by the court, it appears that each defendant had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding as well as factual understanding of the proceedings against him.

It is noteworthy that Owens' present appointed attorney in his brief devotes very little to the frivolous insanity defense, but focuses almost entirely on his argument that Rule 11 was violated in the acceptance of the guilty pleas. This argument is specious in view of the decision of the Supreme Court in *Timmreck*.

## II

In sum, it appears that Owens had at most only a colorable defense of insanity without an iota of evidence to support it. He asked for the appointment of a psychiatrist so he could talk to him and then withdrew his request the following day when he and his attorneys believed it would be more advantageous to plead guilty. He admitted under oath that he could assist in his defense. He at all times was adequately and fully advised by his two competent appointed attorneys and Judge Swinford as to his rights and as to the penalties he could receive if he was convicted. There was no doubt as to his guilt. He displayed his intelligence in his answers to the court's questions. At this late date, fourteen years after his conviction, he engages in a collateral attack on his conviction hoping to get a new trial, when the government would be disadvantaged and hard pressed to obtain a conviction because of fading memories and death of witnesses and even of the trial judge in this long period of time and he does not deny that he committed the robberies or his other numerous criminal acts. Also, he is still under sentence which he has not served for the commission of other crimes, and he has not been tried for his escape from the California Medical Facility. It would be folly to grant an evidentiary hearing as requested or consume any more of the valuable time of busy judges in such a fruitless undertaking.

Owens undoubtedly changed his mind when he withdrew his not guilty plea and entered a plea of guilty, because he believed he would receive a better sentence and ultimate parole. The judge explained to him that he could receive a sentence of fifty years on each count. His sentence was only 20 years and it was concurrent with all of his sentences.

It is clear from *Timmreck* that there was no violation of the constitutional rights of Owen in the proceedings. In a collateral proceeding, the burden of proof was upon the petitioner to establish that his constitutional rights were violated. He offered no proof on the frivolous insanity issue, not even the records of the California facility from which both he and his confederate escaped. In view of the escape made by both defendants, a judge would necessarily be wary of a repeat performance if either were confined for psychiatric examination in another medical facility.

The judgment of the district court is affirmed.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I dissent. I do not believe that this case is controlled by *United States v. Timmreck*,

441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), because the question whether a guilty plea is entered voluntarily and intelligently is not an issue which merely concerns compliance with the formalities of Rule 11 of the Federal Rules of Criminal Procedure. I believe that the transcripts at Owen's arraignment raise substantial questions about his ability to enter a knowing and intelligent guilty plea, and I would remand this case for an evidentiary hearing on that issue. If the Government has been prejudiced by Owen's delay in filing this action for post-conviction relief, it could present evidence on that issue at the evidentiary hearing. For these reasons, I would remand this case to the district court.