**UNITED STATES of America**

v.

**William T. SMITH, Jr.**

**Crim. No. 84–00156–04.
Civ. No. 87–1233.**

United States District Court,
M.D. Pennsylvania.

Dec. 14, 1987.

James J. West, U.S. Atty., Harrisburg, Pa., for plaintiff.

John Rogers Carroll, Philadelphia, Pa., for defendant.

## ORDER

MUIR, District Judge.

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Currently pending before this Court is the motion of William T. Smith, Jr., to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. On June 24, 1985, Smith was found guilty by a jury on nine counts of an indictment handed down October 22, 1984. One count was for conspiracy to commit mail fraud and interstate transportation in aid of racketeering. The conspiracy count charged that Smith and his co-conspirators sought to obtain Federal Insurance Contribution Act ("FICA") recovery contracts from state and local entities on a no-bid basis by bribing public officials with cash, employment, campaign contributions, paid travel, stock and property. Indictment, Count 1, ¶ 3. Three of the counts on which Smith was convicted were for violation of the federal mail fraud stat-

ute, 18 U.S.C. § 1341, and five counts were for violation of the interstate transportation in aid of racketeering statute, 18 U.S. C. § 1952.

On July 23, 1985, this Court sentenced Smith to a 12 year prison term and a $63,-000 fine. Smith's conviction was affirmed by the Court of Appeals for the Third Circuit on April 28, 1986. *United States v. Smith,* 789 F.2d 196 (3d Cir.1986). The United States Supreme Court denied Smith's petition for writ of certiorari on December 15, 1986. *Smith v. United States,* —— U.S. ——, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986). His conviction became final on that date. *See Griffith v. Kentucky,* —— U.S. ——, ——, 107 S.Ct. 708, 712 n. 6, 93 L.Ed.2d 649 (1987). He now seeks to attack collaterally his conviction on the basis of the decision of the United States Supreme Court in *McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which he claims invalidates his conviction on all counts.

In *McNally* the United States Supreme Court held that the federal mail fraud statute, 18 U.S.C. § 1341, is limited in scope to the protection of money or tangible property and does not extend to schemes to defraud citizens of their intangible right to honest and impartial government. *McNally,* —— U.S. at ——, 107 S.Ct. at 2879. In so deciding, the Court rejected the view taken by every Court of Appeals since at least 1941 that had considered the issue. *See McNally,* —— U.S. at ——, 107 S.Ct. at 2883–2884 (Stevens, J., dissenting) (footnotes collecting cases). The Supreme Court reversed McNally's mail fraud conviction because the District Court's instructions permitted the jury to convict McNally for conduct which deprived the citizens of Kentucky of their intangible right to have the Commonwealth's governmental affairs performed honestly. Such conduct, the Court held, was not within the reach of the federal mail fraud statute, 18 U.S.C. § 1341.

Smith contends that this Court's charge to the jury similarly permitted the jury to convict Smith for violation of the mail fraud statute for conduct not within the reach of the statute: depriving the citizens of the Commonwealth of Pennsylvania of their intangible right to good and faithful service by their elected officials. Additionally, he asserts that the *McNally* decision undoes his convictions for conspiracy and interstate transportation in aid of racketeering. This Court's instruction to the jury defining a scheme or artifice which Smith now contends entitles him to a vacation of his sentence was as follows:

> The words "scheme" and "artifice" as used in the statute ... include any plan or course of action intended to deceive other people and to obtain by false or fraudulent pretenses, representations, or promises, money or property from persons so deceived.

> The object of the scheme need not be money or any form of tangible property. A scheme to defraud the citizens of a governmental unit of the good and faithful services of their employees and elected public officials can come within the meaning of scheme or artifice to defraud as set forth in the mail fraud statute.

Transcript June 13, 1985, page 158.

The first issue we must resolve is whether the new statutory interpretation set forth in *McNally* should be applied on collateral review of Smith's conviction which became final before the opinion in *McNally* was announced.

*McNally* did not announce a new constitutional rule of criminal procedure and thus the United States Supreme Court's tripartite test for determining whether a new rule of criminal procedure is to be applied retroactively is inapplicable to this case. *See, e.g., Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) and *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). *McNally* announced a new statutory interpretation by invalidating the intangible rights theory of mail fraud. It did not find that the intangible rights theory violated the constitution.

We seriously question, however, whether Smith is entitled to have *McNally* applied retroactively in a collateral attack of his conviction based on the new statutory interpretation of the mail fraud statute set

forth in *McNally* because his conviction was final prior to the announcement of the Court's decision in *McNally* and because he did not raise the issue of statutory interpretation decided in *McNally* in this Court or in his direct appeals. *See United States v. Osser,* Cr. No. 72–384 (E.D.Pa. Oct. 7, 1987) [Available on WESTLAW, 1987 WL 14755] (*McNally* does not apply retroactively in petition for writ of error coram nobis where petitioner did not raise error on direct appeal.).

In *Sunal v. Large,* 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947), the United States Supreme Court held that defendants may not collaterally attack convictions that under later Supreme Court precedent would have been invalid because they had not raised the issues on direct appeal which they sought to raise in their collateral attack. The defendants in *Sunal* were convicted of failure to submit to induction into the Army in 1945. At trial they were prevented from introducing evidence showing that their selective service classifications were invalid. In 1946, the Supreme Court decided *Estep v. United States,* 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), in which it held that the defense of improper classification was a valid one. Relying on the new law, the *Sunal* defendants sought collaterally to attack their convictions by way of petition for writ of habeas corpus. The Supreme Court denied the petitions because the defendants had not appealed their convictions. The defendants argued that they did not appeal because "the state of the law made the appeals seem futile." *Sunal,* 332 U.S. at 178, 67 S.Ct. at 1590. Although the Court acknowledged that lower court decisions had consistently ruled that no defense of improper classification could be raised in a prosecution for failure to submit to induction, it refused to allow the petition for writ of habeas corpus to substitute for an appeal particularly since the asserted error did not violate any specific constitutional guarantees. *Sunal,* 322 U.S. at 179, 67 S.Ct. at 1591.

The procedural history of the case *sub judice* is not unlike that in *Sunal.* The difference is that Smith did not raise the issue here and did not object to the instruc-

tion given by this Court upon which he bases his motion whereas the defendants in *Sunal* did raise in the trial court the issue upon which they based their habeas corpus petition. And like the Defendants in *Sunal,* Smith did not raise as error on direct appeal the error he raises in this collateral attack. Also like *Sunal,* the law on the issue of intangible rights and the mail fraud statute was not only well settled in this circuit, *United States v. Clapps,* 732 F.2d 1148, 1152–1153 (3d Cir.1984) at the time of Smith's conviction but also in every other circuit that had addressed the issue. *McNally,* —— U.S. at ——, 107 S.Ct. at 2883–2884 (Stevens, J. dissenting) (footnotes collecting cases). Therefore, Smith may have determined that any appeal raising the invalidity of the intangible rights theory of mail fraud would have been futile. That argument was not successful in *Sunal* and we see no reason for it to be successful here. Under the reasoning of *Sunal,* it is our view that *McNally* should not be applied retroactively to Smith's conviction.

The Supreme Court's recent decision in *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), also supports our view. In *Allen* the Supreme Court held that its rule in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), should not be applied retroactively on collateral review to convictions that became final before *Batson* was decided. In *Batson,* a case implicating the Constitution, the Court overruled a portion of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1985), and changed the standard for proving unconstitutional abuse of peremptory challenges. Although the Supreme Court's views on retroactivity are far from clear and settled, *see, e.g., Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) and cases cited therein, it appears reasonable to conclude that a more stringent test as to retroactivity should be applied in cases relating to constitutional guarantees than in cases such as the one now before us concerning statutory interpretation.

Another case and the test set forth therein worthy of mention here is *United States v. Davis*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), although, unlike Smith, the defendant in *Davis* raised the relevant issue at trial and on direct appeal. In *Davis*, a selective service case concerning statutory and regulatory interpretation, the Supreme Court granted relief after conviction pursuant to 28 U.S.C. § 2255 because of a subsequent change in the law. However, in reaching its decision, the *Davis* court made it clear that not every asserted error of law can be raised on a 28 U.S.C. § 2255 motion. *Davis*, 417 U.S. at 346, 94 S.Ct. at 2305. The appropriate inquiry is whether "the claimed error ... was a 'fundamental defect which inherently results in a complete miscarriage of justice,' and whether '[i]t ... present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Davis*, 417 U.S. at 346, 94 S.Ct. at 2305 quoting from *Hill v. United States*, 368 U.S. 424, 428–429, 82 S.Ct. 468, 471–472, 7 L.Ed.2d 417 (1962).

Smith is not entitled to relief pursuant to 28 U.S.C. § 2255 because of his failure to raise the "intangible rights" issue prior to the finality of his conviction; however, even if Smith had raised the issue, it does not appear that our "intangible rights" instruction would require retroactive application of *McNally* because the indictment in this case charged the property loss required by *McNally* and the proof at trial established that the scheme to defraud would bring financial loss to the Commonwealth of Pennsylvania.

The indictment charged that it was part of the conspiracy that:

The Defendants would obtain lucrative contracts from state and local government without competitive bidding, notwithstanding the fact that others were willing to perform substantially identical FICA recovery work at a much lower cost.

Indictment, ¶ 3(h). Further, ¶ 4(f) of the indictment charged that one of the objects of the conspiracy was:

to defraud the citizens of the Commonwealth of Pennsylvania, and other states where the defendants did business, of the tangible monetary savings and financial benefit flowing from the [intangible] rights [of the citizens to the faithful and honest services of their public officials].

A fair reading of the indictment shows that the heart of the scheme or artifice to defraud was to influence through bribery the awarding of a no-bid contract at an inflated price to the monetary prejudice of the Commonwealth of Pennsylvania and the school districts who would pay inflated commissions under the contract let by the Treasurer of Pennsylvania.

This scheme differs substantially from the scheme in *McNally* where commissions of the insurance company writing the workers compensation policy for the Commonwealth of Kentucky were to be shared with other insurance companies in which the defendants had an ownership interest in exchange for the contract to write the policy. The defendants "received part of the commissions but those commissions were not the Commonwealth's money," *McNally*, —— U.S. at ——, 107 S.Ct. 2875 at 2882, and thus the scheme did not impact on Kentucky's treasury.

The evidence presented at the trial in this case, as summarized by the Court of Appeals is, in pertinent part, as follows:

During 1983, the defendants tried to obtain the FICA recovery contract for all Pennsylvania state employees. Torquato and Smith wanted a fee of $8,000,000 for the job. In November 1983, however, they discovered that the contract was to be performed in-house at a cost of $300,-000. To secure the contract, Smith and Torquato had visited the Republican State Chairman, Robert Asher, in July 1983, and offered him $500,000 from the contract for the Republican Party. They decided that, in order to obtain the FICA recovery contracts, they needed to have jurisdiction over the contracts moved from the governor to the State Treasurer, R. Budd Dwyer, a friend of Smith's. Smith met with Senate Minority Whip Eugene Scanlon, David Herbert, and Jim

Scanlon to discuss legislation to accomplish the change. After the legislation passed, Torquato purchased $500 worth of tickets to House Majority Leader Jim Mandarino's fund raiser.

Torquato and Smith met with the Treasurer of Pennsylvania on March 2, 1984, and discussed a $300,000 payment to be divided among the Treasurer, the Treasurer's reelection campaign, and the Republican State Committee. Herbert continued to aid Torquato and Smith and on May 10, 1984, the Treasurer awarded the Pennsylvania contract to the Pennsylvania company formed by Smith in April 1984, Computer Technology Associates, Inc. Herbert was to be given $100,000 in a Swiss bank account. The contract, awarded on a no-bid basis, would have generated $4,000,000 in profit, to be split between Smith and Torquato, at an expense to the Commonwealth of $6,000,000. The contract was ultimately performed by an accounting firm, Levin–Horwath (sic), for $1,300,000 with a possibility of up to thirty-five percent being rebated.

*United States v. Smith*, 789 F.2d 196, 199 (3d Cir.1986). Our recollection is that Leventhal and Horwath *offered* to perform the contract for $1,300,000 rather than that it actually performed the contract, but this detail is of no importance to our analysis here. The evidence unequivocally established that the contract could have been performed for substantially less than $6,000,000. The evidence proved a scheme to defraud the citizens of Pennsylvania of money.

We are not dealing here with a record devoid of proof of an element of a crime or with a defendant who would stand convicted of something which was not a federal crime. Accordingly, we are of the view that the failure to charge the jury on the now required money or property element of schemes to defraud under the mail fraud statute was not a fundamental defect which resulted in a miscarriage of justice or created exceptional circumstances warranting the relief afforded by a 28 U.S.C. § 2255 motion.

NOW, THEREFORE, IT IS
ORDERED THAT:

The motion of William T. Smith, Jr. to vacate, set aside, or correct sentence is denied.