**Thomas A. BELT, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 87–1415–Civ–T–10.

United States District Court, M.D. Florida, Tampa Division.

Feb. 18, 1988.

William B. Plowman, Tampa, Fla., for petitioner.

Peter E. George, Asst. U.S. Atty., Tampa, Fla., for respondent.

*ORDER*

HODGES, Chief Judge.

Petitioner Thomas A. Belt (Belt), a federal prisoner, brings this action pursuant to 28 U.S.C. § 2255 seeking to have his sentence vacated. Belt pled guilty to two counts of wire fraud, in violation of 18 U.S.C. § 1343, on April 26, 1986. On May 30, 1986, the Court sentenced Belt to a four year term of imprisonment to be followed by three years of probation. No appeal was taken.

In support of his petition Belt asserts that his sentence should now be vacated in light of the United States Supreme Court's intervening decision in *McNally v. United States*, 483 U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Belt argues that the *McNally* decision establishes that he was convicted for conduct which was not criminal. Therefore, Belt concludes, *McNally* should be applied retroactively to terminate his wrongful incarceration.

The Government advances two arguments in opposition to Belt's petition. First, the Government contends that *McNally* is inapplicable to the facts of this case. Second, the Government argues that even if *McNally* does apply, it should not be given retroactive effect. For the reasons detailed below, the Court cannot agree.

The *McNally* case involved an insurance broker serving the Commonwealth of Kentucky who secretly paid part of his commissions to certain state employees (the defendants) who, in return, used their political influence to ensure that the broker continued to receive the Commonwealth's business. The district court convicted defendants of mail fraud, pursuant to 18 U.S.C. § 1341, and the Court of Appeals affirmed.

The Supreme Court reversed, finding that the jury instructions, which allowed the jury to convict based upon a scheme to defraud the citizens of the Commonwealth of their intangible right to have their government's affairs conducted honestly, "permitted a conviction for conduct not within the reach of § 1341." *McNally*, 483 U.S. at ——, 107 S.Ct. at 2882, 97 L.Ed.2d at 303. The Court held that the mail fraud statute does not reach schemes to defraud individuals of their rights to honest and impartial government but rather is "limited in scope to the protection of property rights." *Id.* at ——, 107 S.Ct. at 2879, 97 L.Ed.2d at 302. *See Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987) ("*McNally* did not limit the scope of § 1341 to tangible as distin-

guished from intangible property rights.") Importantly, the *McNally* Court noted that "It was not charged that in the absence of the alleged scheme the Commonwealth would have paid a lower premium or secured better insurance.... Nor was the jury charged that to convict it must find that the Commonwealth was deprived of control over how its money was spent." *McNally*, 483 U.S. at ——, 107 S.Ct. at 2882, 97 L.Ed.2d at 302. Because the indictment did not allege and the jury was not required to find that the Commonwealth had been defrauded of any money or property, the Court found that no protected right had been infringed and thus reversed defendants' convictions.

■ Belt argues that his wire fraud convictions are likewise infirm because he pled guilty to a scheme which merely infringed on his employer's non-property rights, i.e., its rights to have its business conducted honestly and to have the loyalty and faithfulness of its employees.[1]

The Government disagrees and urges the Court to look beyond the language of the indictment to the scheme itself. The Government asserts that the facts alleged in the indictment and submitted in the Government's "Factual Basis for Guilty Plea" show that Belt caused his employer to suffer economic detriment by virtue of his accepting bribes or "baksheesh." The Government argues that when the conduct underlying the indictment is examined, it is clear that Belt committed acts which continue to provide a legal basis for his prosecution and conviction. This may be so but it does not serve to distinguish *McNally*. Although the Government may be able to successfully allege that Belt schemed to defraud his employer of money or property, the simple fact is that it has not done so. The indictment to which Belt's guilty plea was accepted alleged only that he "knowingly and willfully devised and intended to devise a scheme and artifice to defraud Fluor [Belt's employer] of its right to have its business conducted honestly,

---

**1.** Both parties agree that the *McNally* rationale is equally applicable to the wire fraud statute. *See United States v. Conner,* 752 F.2d 566, 573 n.

1 (11th Cir.1985) ("Cases construing § 1341 apply to construction issues involving § 1343.").

impartially, free from deceit, corruption, fraud, dishonesty and conflict of interest and of its right to the conscientious, loyal, honest, faithful and disinterested services, decisions, actions and performance of duties by its employees." No other scheme was alleged and the Court cannot accept the Government's argument which is, in essence, an invitation to rewrite the indictment. Belt admitted his guilt to a solitary scheme which, under *McNally*, has never constituted a criminal offense.

The question remains as to whether *McNally* should be accorded retroactive application.

An examination of the case law indicates that in determining whether a new decisional rule should be applied retroactively, different tests are used depending upon the nature and rationale of the new decision itself. The first line of cases considering the retroactivity of judicial decisions is typified by the decisions in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam). In each of these cases the Court considered the retroactivity of earlier decisions which had involved matters of constitutional criminal procedure and arrived at its conclusion concerning retroactivity after weighing a number of factors.[2]

Similar but slightly different factors are examined when the retroactivity of a civil or nonconstitutional decision is determined. *Acoff v. Abston*, 762 F.2d 1543, 1548 n. 6 (11th Cir.1985). *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).[3]

However, the applicability of the *McNally* holding to this case presents a different

kind of issue which is not governed, in my view, by either of those lines of decisions. Indeed, use of the term "retroactivity" to describe the issue to be decided is in the nature of a misnomer and is potentially misleading where, as here, the Supreme Court has for the first time ruled on the interpretation of a criminal statute. In *McNally*, the Court neither reversed its own prior statutory interpretation nor did it fashion a new constitutional rule. Instead, it discerned Congress's original intent in enacting the mail fraud statute and held that Congress had never intended to make certain acts criminal. From the very inception of the mail fraud statute, therefore, courts were without authority to convict persons who committed the acts charged in the *McNally* (and Belt) indictments. Thus, this is not a case in which *McNally* need be applied "retroactively" but simply a case in which the same mistake was made in interpreting the mail fraud statute. The Court's duty now is to correct this error and apply the proper interpretation of the statute to the facts of this case.

This analysis, which eschews a traditional retroactivity inquiry, finds ample support in the case law of the Supreme Court and the lower federal courts.

In *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), the Court was confronted with the issue of what, if any, retroactive effect should be accorded to its previous decision in *Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), which held that the guarantee against double jeopardy precluded the recognition of the "dual sovereignty" doctrine with respect to separate state and municipal prosecutions. In determining the retroactive effect of *Waller*, the Court con-

---

**2.** The factors to be considered are: (a) the purpose to be served by the new standards (including a determination of whether application of the new rule to earlier cases would impact upon the reliability of the fact finding process in those cases), (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. *See e.g., Allen, supra,* 478 U.S. at ——, 106 S.Ct. at 2880.

**3.** This test focuses on (a) whether the new principles overrule clear past precedent, (b) whether retroactive operation will further or retard the operation of the new principle, and (c) whether retroactivity will produce substantial inequitable results. *Chevron, supra,* 404 U.S. at 106–07, 92 S.Ct. at 355 (1971).

sidered the *Linkletter* test but found it inapplicable. *Linkletter* and its progeny, the Court noted, were not cases considering rules which if they had been applied, might have affected the basic fairness or the reliability of the fact-finding process of the earlier trial. Instead, the rules in those cases involved collateral purposes such as the deterrence of unlawful police conduct. *Robinson, supra,* 409 U.S. at 509, 93 S.Ct. at 878. The situation in *Robinson* was very different, however, since the *Waller* decision "was squarely directed to the prevention of the second trial's taking place at all, even though it might have been conducted with a scrupulous regard for all of the constitutional procedural rights of the defendant." *Id.* The Court concluded that in those circumstances, when the propriety of even commencing the trial was at issue, the *Linkletter* test was inapplicable and the underlying decision should be applied retroactively. Accordingly, the Court granted *Waller* full retroactive effect. *Id.* at 511, 93 S.Ct. at 879.

A similar rationale was employed again by the Supreme Court in *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) which more closely resembles this case. In *Davis,* the petitioner was convicted for failure to report for induction into the armed services. After petitioner's conviction the law of his circuit was changed when the Ninth Circuit reversed a conviction in another case which was based on facts virtually identical to those presented in *Davis.* When the lower courts denied Davis's § 2255 petition, the Supreme Court reversed and held, first, that Davis could base his petition on nonconstitutional claims. The Court then held, secondly, that if in fact Davis had been convicted for an act that the law does not make criminal, he should be granted collateral relief under § 2255. The Court did not find it necessary to engage in a retroactivity analysis to arrive at this result; instead, it simply noted that if the conviction for a noncriminal act was allowed to stand, "a complete miscarriage of justice" would occur. *Id.* at 346–47, 94 S.Ct. at 2305.

The reasoning of *Davis* has recently been followed by the Second Circuit in an-

other case with facts very similar to those presented here. In *McClain v. United States,* 643 F.2d 911 (2d Cir.), *cert. denied,* 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424 (1981), the petitioner was convicted of armed bank robbery in violation of 18 U.S.C. § 2113(d), and commission of a felony while armed, in violation of 18 U.S.C. § 924(c). After petitioner's conviction the Supreme Court decided *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), which held that a defendant convicted under 18 U.S.C. § 2113(d) could not also be sentenced under 18 U.S.C. § 924(c). The *Simpson* decision was followed by a later decision of the Second Circuit which concluded that the Government could not even prosecute a defendant under both statutes. *Grimes v. United States,* 607 F.2d 6 (2d Cir.1979). The *McClain* court, therefore, was confronted with a situation analogous to the one here; McClain had been convicted of an act for which he could not legally be prosecuted.

On the basis of *Robinson,* the Second Circuit concluded that the *Linkletter* test for retroactivity was inapplicable. Instead, the Court applied "the simpler and less complicated tests of fundamental fairness and due process" and held that the petitioner was entitled to relief. *Accord Cooper v. United States,* 639 F.Supp. 176 (M.D.Fla. 1986) (a conviction for an act that Congress never intended to be criminal constitutes a "complete miscarriage of justice and mandates § 2255 relief.").

█ In this case, the decision announced in *McNally* clearly establishes that Belt's conviction and punishment, under the allegations of the indictment as it was filed, are for acts which are not criminal. Therefore, "[t]here can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and present[s] exceptional circumstances that justify collateral relief under § 2255." *Davis, supra,* 417 U.S. at 346–47, 94 S.Ct. at 2305. *Accord United States v. Mandel,* 672 F.Supp. 864 (D.Md.1987) (*McNally* applied retroactively to a petition for writ of error *coram nobis*); *Ingber v. Enzor,* 664

F.Supp. 814 (S.D.N.Y.1987) (*McNally* applied retroactively in § 2255 proceedings).[4]

Accordingly, Belt's motion to vacate his sentence is GRANTED, and the Judgment and Commitment Order entered in the case of *United States v. Thomas A. Belt,* Case No. 86–248–Cr–T–10, on May 30, 1986 is VACATED.

IT IS SO ORDERED.

Ann B. Russell, pro se.

---

4. Two cases have held that *McNally* should not be given retroactive application. *United States v. Smith,* 675 F.Supp. 978 (M.D.Pa.1987); *United States v. Callanan,* 671 F.Supp. 487 (E.D.Mich. 1987). However, the decision in *Smith* is distinguishable because, as the Court noted, the indictment specifically alleged an economic property loss to the state as the victim of Smith's fraud.