**UNITED STATES of America, Plaintiff,**

v.

**Gordon WALGREN, Defendant.**

**No. CR80–126M.**

United States District Court,
W.D. Washington, at Seattle.

Sept. 7, 1988.

John Merkel, Asst. U.S. Atty., Seattle, Wash., for plaintiff.

Anthony Savage, Seattle, Wash., for defendant.

## ORDER DENYING DEFENDANT'S MOTIONS TO VACATE CONVICTIONS AND FOR NEW TRIAL

McGOVERN, District Judge.

### ORDER

Eight years after the convictions of defendant on racketeering, mail fraud, and Travel Act charges, it is recommended to the District Court that the racketeering and mail fraud convictions may not stand under new case law and must be vacated owing to their possible impact on any future criminal convictions.

Moreover, years after these convictions were affirmed on appeal, it is recommended that the District Court consider the materiality of defendant's "newly-discovered evidence" and ignore the two-year limitations period for such motions because an open-ended continuance of the motion was granted three years ago.

The Court declines to follow these recommendations.

## I. WRIT OF ERROR CORAM NOBIS UNAVAILABLE

■ The Report and Recommendation explains that a *coram nobis* writ is available only to correct errors of law or fact of a *fundamental nature*, "such as rendered the proceeding itself invalid." *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir.1987), and that the petitioner must also demonstrate that "adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III." *Id.* There are required additional threshold showings that (1) a more usual remedy is not available, and that (2) valid reasons exist for not attacking the conviction earlier. *Id.*

While no other remedy is available to Defendant Walgren now, he has not shown the presence of the remaining three elements necessary to qualify for *coram nobis* relief.

### A. NO VALID REASONS FOR NOT ATTACKING CONVICTION EARLIER

■ The question of whether Defendant Walgren may at this late date have his conviction reviewed and vacated based on the holding in *McNally v. United States*, — U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) concerning the scope of the Mail Fraud Statute when he did not raise the issue himself in his appeals must be answered "no" pursuant to the Supreme Court's decision in *Sunal v. Large*, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947). *Sunal* held that defendants may not collaterally attack convictions that under later Supreme Court precedent would have been invalid if they had not raised the issues on direct appeal that they sought to raise in their collateral attacks. Thus, *McNally* may not be applied retroactively in Walgren's case because he has shown neither that (1) he did raise the issue of the scope of the Mail Fraud Statute in his appeals, nor that (2) he had a valid reason for not doing so. The Report and Recommendation distinguished *Sunal* saying the change of law therein was procedural and not substantive as in *McNally;* instead, *Davis v. United States*, 417 U.S. 333, 345–46, 94 S.Ct. 2298, 2304–05, 41 L.Ed.2d 109 (1974) was cited for the retroactive application of *McNally*. The procedural versus substantive law distinction drawn by the Magistrate is not significant to *Sunal's* holding. There is a crucial difference between *Davis* and *Sunal*, which the *Davis* court recognized: there was an appeal of the issue in question in *Davis* while in *Sunal* there was not. Referring to *Sunal*, *Davis* observed: "The Court was careful to point out that 'if Sunal and Kulick had pursued the appellate course and failed, their cases would be quite different.'" *Davis*, 417 U.S. at 345, 94 S.Ct. at 2304.

The Magistrate also reviewed lower court decisions from various jurisdictions dealing with the specific issue of *McNally's* retroactivity. The decisions were split, and he followed the opinion in *Ingber v. Enzor*, 841 F.2d 450 (2d Cir.1988). The Defendant in *Ingber* challenged his conviction of February 1987 by a petition pursuant to 28 U.S.C. § 2255 filed shortly after the *McNally* decision, and on July 15, 1987, the Trial Court reversed *Ingber's* convictions pursuant to *McNally*. The Trial Court's rationale was that the Court lacked authority to convict or punish the conduct charged, for it was not criminal under *McNally*. There is no indication whether the issue in his § 2255 petition was asserted on appeal.

Taking the opposite view, the Court in *United States v. Smith*, 675 F.Supp. 978 (M.D.Pa.) *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 832 (1987), characterized the conclusion in *McNally* as a new interpretation of a statute and, citing *Sunal*, questioned *McNally's* application in a collateral attack where the defendant did not raise the issue of statutory interpretation in the Trial Court or in his direct appeals:

> In *Sunal v. Large*, 332 U.S. 174 [67 S.Ct. 1588, 91 L.Ed. 1982] (1947), the United States Supreme Court held that defendants may not collaterally attack convictions that under later Supreme Court precedent would have been invalid because they had not raised the issues on direct appeal which they sought to raise in their collateral attack.

*Smith*, 675 F.Supp. at 980.

There is legitimate concern for finality in criminal prosecutions behind the *Smith* and *Sunal* decisions. Criminal jurisprudence is in constant flux. Principles of law are clarified and refined as countless permutations of circumstances are presented in cases before the Courts. The Courts could count on little repose for decided cases if new cases were applied retroactively regardless of whether the earlier defendants raised the newly determined issue. Indeed, in *Sunal* the Justices observed, "We are dealing here with a problem which has radiations far beyond the present cases," 332 U.S. at 181, 67 S.Ct. at 1592, and reasoned:

> If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by *habeas corpus*, litigation in these criminal cases will be interminable. Wise judicial administration of the federal courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court.

*Id.* at 182, 67 S.Ct. at 1593. In Walgren's case, the error does not trench on any constitutional rights nor involve the Trial Court's jurisdiction; it concerns only a non-constitutional reinterpretation of a statute.

■ Defendant Walgren is attacking his conviction based on a United States Supreme Court decision issued many years later even though he has failed to show that he raised the issue in the Trial Court or on appeal or that he had a valid reason for not doing so. This he may not do under *Sunal*. Even if Defendant Walgren were to argue that an appeal on this issue did not appear viable in view of the jurisprudence extant, *Sunal* forecloses raising the issue now.

The defendants in *Sunal* were attempting to pursue reversal of their convictions under new Supreme Court decisions by *habeas corpus* petition. While the general rule that the writ of *habeas corpus* "will not be allowed to do service for an appeal," *id.* at 178, 67 S.Ct. at 1590, is not absolute, the Supreme Court found none of the exceptions present and held:

> But since they chose not to pursue the remedy which they had, we do not think they should now be allowed to justify their failure by saying they deemed any appeal futile.

*Id.* at 181, 67 S.Ct. at 1592. The same reasoning applies with greater force in the case of Walgren who is seeking relief pursuant to a writ of error *coram nobis*, a more extraordinary avenue than *habeas corpus*. Defendant Walgren has failed to show that he either raised the issue herein on appeal or had a valid and sufficient

reason for not doing so. Defendant has failed to carry his burden on the first element to be shown for *coram nobis* relief.

He has also failed to carry his burden on the second element, that of demonstrating fundamental error.

## B. NO FUNDAMENTAL ERROR

The Report and Recommendation concluded that Defendant was convicted for conduct that under *McNally v. United States*, — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) was not a crime. Answering the threshold inquiry referenced in *Davis*—whether the claimed error of law was "a fundamental defect which inherently results in a complete miscarriage of justice," and whether "[i]t ... present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent"—*Davis*, 417 U.S. at 346, 94 S.Ct. at 2305, the Magistrate concluded that allowing the defendant's conviction for mail fraud to stand would result in a complete miscarriage of justice. This Court cannot so conclude.

The Court in *McNally* held that "[t]he mail fraud statute clearly protects property rights, but does not refer to the intangible right of the citizenry to good government." — U.S. at —, 107 S.Ct. at 2875. Therefore, in *McNally*, since there was no charge or jury instruction requiring a finding that the government itself had been defrauded of any money or property, the convictions were invalid. The Report and Recommendation explained that since Walgren's case was charged, argued, and instructed under a theory that the defendants had defrauded the citizens of the state of the right to good government, the Mail Fraud conviction could not stand in view of *McNally*.

On the contrary, the unethical conduct in *McNally* that did not amount to a crime within reach of the Mail Fraud Statute does not compare with the criminal conduct with which Defendant Walgren was charged, about which the jury was instructed, and for which Defendant Walgren was convicted.

### 1. Charges Against Defendant Walgren

Defendant Walgren was convicted on three counts: Count II, RICO (19 U.S.C. § 1952), Count XVII, Travel Act (18 U.S.C. § 1952), and Count XXIV, Mail Fraud (18 U.S.C. §§ 1341 and 1342), and was sentenced to five years in custody on each count, to run concurrently. (He has served his sentence and completed the terms of his parole.)

The RICO count charged four different categories of racketeering activity in alleging the required pattern. The jury was instructed that they must find at least two acts of racketeering. The verdict does not reveal the two underlying acts of racketeering found by the jury. Acts of bribery in violation of Washington law were charged in one category of activity; violations of the mail fraud and Travel Act statutes were charged under other categories of racketeering activity. Additionally, the mail fraud and Travel Act violations were charged in separate counts as substantive crimes by themselves in addition to forming the basis for a RICO (racketeering) violation.

The jury was instructed [Court's Instruction No. 25] that bribery under Washington law (RCW 9A.68.010) is committed if a

public servant: requests, accepts or agrees to accept any pecuniary benefit pursuant to an agreement or understanding that his ... action as a public servant will be used to secure or attempt to secure a particular result in a particular matter.

The jury was also instructed [Court's Instruction No. 29] that extortion under color of official right (18 U.S.C. § 1951) occurs if

money or property was unlawfully obtained from another person by a public officer, under color of his office.

The jury was instructed on the elements to convict under the Travel Act at Instruction 33. The Travel Act (18 U.S.C. § 1952) prohibits interstate and foreign travel or transportation in aid of racketeering enterprises, and "unlawful activity" referred to

in the statute is defined in the statute to include extortion and bribery.

The jury was instructed on the elements to convict under the Mail Fraud statute at Instruction 35. The Mail Fraud statute (18 U.S.C. § 1341) prohibits use of the United States Postal Service for the purpose of executing or attempting to execute any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

The objective of the scheme charged was to effect legalization and expansion of gambling activity in Washington in return for personal financial gain.

The indictment at Count XVIII charges that this scheme and the illegal activities charged to carry it out would work

> to defraud the citizens of the State of Washington and its governmental departments, agencies, officials, and employees, both executive and legislative, of their right to the conscientious, loyal, faithful, disinterested, and unbiased services, actions, and performance of official duties ... free from bribery, corruption, partiality, willful omission, bias, dishonesty, deceit, official misconduct, and fraud....

### 2. Analysis of Charges in View of McNally

While it may appear that the effect of this scheme upon the citizens of the State of Washington places the case squarely within *McNally*, there is a crucial difference in the charges for which Defendant Walgren was convicted. All acts giving rise to charges against Defendant Walgren are *crimes;* they are not mere violations of ethical duties. In *McNally*, however, it was not established that it was illegal for defendants to have received or required the payments at issue:

> It is worth observing as well that it was not alleged that the mail fraud statute would have been violated had Hunt and Gray reported to state officials the fact of their financial gain. The violation asserted is the failure to disclose their financial interest, even if state law did not require it, to other persons in the state

government whose actions could have been affected by the disclosure.

*McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 2882 n. 9, 97 L.Ed.2d 292 (1987). Similarly, in *United States v. Mandel,* 672 F.Supp. 864 (D.Md.1987), where the Court vacated judgments of conviction against the former Governor of Maryland for Mail Fraud and RICO violations, the theory was breach of the abstract right of citizens to good government, and the Court observed when the Government argued that the defendant's acts constituted bribery:

> ... there is substantial doubt that the Maryland law, or the general law of *quid pro quo,* relating to bribery was even adequately laid before the jury in relation to the mail fraud counts or otherwise.
>
> \*     \*     \*     \*     \*     \*
>
> Mandel might well have been bribed. His co-defendants might well have bribed him. But, however strong the evidence of dishonesty or bribery, the jury was told it could convict for something that did not amount to a federal crime.

*United States v. Mandel,* 672 F.Supp. at 878.

In contrast, the acts underlying Defendant Walgren's Mail Fraud conviction do constitute the crimes of bribery and extortion—unquestionably criminal violations—which were adequately laid before the jury in the evidence, the jury instructions, and argument. Defendant Walgren was charged with receipt of a clipping service paid for and provided to him by Special Agent Heald, posing as a representative of an organized crime syndicate. The evidence showed that Walgren indicated to Special Agent Heald that he wanted an unknown person to order it because he did not want it reported to the Public Disclosure Commission. It was alleged that receipt of this service was a quid pro quo to Walgren in return for him and his codefendants using their powers to further the interests of So-Cal (the fictitious corporation purported to defendants to be an organized crime syndicate controlled business). These acts are chargeable as bribery and

extortion: Walgren unlawfully obtained a benefit from another, under color of office, to secure a particular result in a particular matter.

Thus, in Walgren's case, unlike *McNally*, the underlying acts giving rise to the charge of Mail Fraud constitute a crime. Not only do the acts charged constitute a crime, but they constitute a fraud that is within the ambit of the Mail Fraud statute as there is a deprivation of property: the value of the benefit Walgren received.

A principle of the law of agency applies to the bribery scheme for which Defendant Walgren was convicted on the Mail Fraud count and explains how an agent accepting bribes deprives the principal of property:

> If an agent receives anything as a result of his violation of a duty of loyalty to the principal, he is subject to a liability to deliver it, its value, or its proceeds, to the principal.

*Restatement (Second) of Agency* § 403 (1958). The rationale underlying this agency principle is that an agent owes a duty of loyalty to the principal, may not act adversely to the principal, and is not permitted to make a profit from any breach of duty to the principal. *Id.* Thus, an agent who receives a bribe is liable to the principal for the full amount of the bribe and may not even deduct the amount of expense that went to acquire it. *Id.* This agency principle reflects sound notions of fairness and justice: a wrongdoer should not keep ill-gotten gain, and the victim of the breach of loyalty receives compensation or restitution.

The Report and Recommendation rejected this principle saying it is improper to speculate about what the jury might have concluded if these intangible property rights had been charged, argued, and expressly included in the jury instructions, citing *United States v. Italiano*, 837 F.2d 1480, 1482–87 (11th Cir.1988). It is unnecessary to engage in speculation, however. Among the elements to be proved to convict for Mail Fraud is a scheme to defraud; the scheme was described and the evidence adduced. Instruction # 38 emphasizes that the gist of the offense is the use of the

mails to carry out, or attempt to carry out, a scheme to defraud, *and not the scheme itself.* Moreover, the instruction concluded: "The success or failure of the scheme is immaterial, and it is not necessary to show that any person was in fact defrauded." A scheme to defraud was alleged by the Government; the scheme constituted bribery or extortion. Simply because the Government did not so label the criminal scheme nor the Court's instructions include sub-elements of it neither changes nor invalidates the verdict that the mails were used to further the scheme. Since the acts constituting the scheme to defraud were illegal, reversal of the conviction for a failure to specifically label them would be manifestly unjust.

On the agency issue the Magistrate chose to follow *United States v. Holzer*, 840 F.2d 1343 (7th Cir.1988) rather than *United States v. Runnels*, 833 F.2d 1183 (6th Cir.1987). The Report and Recommendation quoted *Holzer* at 1348:

> Unless we assume unreasonably that the state wants [the defendant] to take bribes so that it can recoup them under constructive-trust principles, the state's financial situation is the same whether he takes bribes or doesn't take bribes. The only difference between the two situations is that in the first [the defendant] has deprived the state of its intangible right to honest civil servants. This is an intangible-rights case and only an intangible-rights case.

The *Holzer* Court saw only the absurdity of viewing bribes to employees/agents as a source of revenue *desired* by the employer/victim and available through a constructive trust theory rather than as a legal mechanism to deal with unjust enrichment or ill-gotten gain obtained by a disloyal, scheming employee.

The agency principles discussed, however, have not been rejected by the Supreme Court as being capable of supporting a Mail Fraud charge when all other elements are present. While the Magistrate's Report and Recommendation suggests otherwise by citing *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316,

98 L.Ed.2d 275 (1987) and noting that *Runnels* was vacated on rehearing, neither of these cases mandates a rejection of the contention that acts of bribery as part of a scheme to defraud may constitute a valid conviction under the Mail Fraud statute.

In *Runnels,* on Codefendant Shapero's petition for rehearing, the Court explains a charging discrepancy between codefendants where one was charged by indictment, while the other pled to an information:

> ... Shapero points out that he did not plead guilty to the original indictment brought against him and Runnels, the indictment on which Runnels was ultimately tried. Instead, Shapero pled guilty to a superseding information which specifically charged him only with a scheme intended "to defraud the members of local 22 ... of the right to have the business of Local 22 conducted honestly, fairly ..., free from corruption ... and fraud." Thus, he was not charged with, nor did he plead to, acts falling within the general ambit of the mail fraud statute, such as the act of depriving the union members of a benefit that might otherwise have been available to them.

842 F.2d 909, 910 (6th Cir.1988). The *Runnels* Court went on to acknowledge the latest Supreme Court action on the subject in *Carpenter:*

> The Supreme Court has now indicated that a mail fraud conviction may rest on the deprivation of benefits that have monetary value, though they are not in a sum that has been liquidated, or perhaps even subject to ascertainment, *Carpenter v. United States,* — U.S. —, 108 S.Ct. 316, 321, 98 L.Ed.2d 275 (1987).

*Id.* Because Shapero was not charged with such a crime, the Sixth Circuit reversed the conviction based on his plea. In contrast, Walgren's conviction does rest on the deprivation of a benefit having monetary value: the clipping service.

The Supreme Court recognized underlying agency principles in upholding a conviction in a highly publicized stock market fraud. *Carpenter* concerned the Securities Act, Mail Fraud, and Wire Fraud convictions of *Wall St. Journal* Reporter R. Foster Winans and his codefendants. Pursuant to an ongoing scheme to share profits from trading in anticipation of the impact of the *Journal's* "Heard on The Street" column, in violation of his duty to his employer, Winans passed along to his codefendants confidential information belonging to the *Journal.* The Supreme Court observed (citing case law and agency law principles):

> As the New York courts have recognized, "It is well established, as a general proposition, that a person who acquires special knowledge or information by virtue of a confidential or fiduciary relationship with another is not free to exploit that knowledge or information for his own personal benefit but must account to his principal for any profits derived therefrom." *Diamond v. Oreamuno,* 24 N.Y.2d 494, 497, 301 N.Y. S.2d 78, 80, 248 N.E.2d 910, 912 (1969); see also Restatement (Second) of Agency §§ 388, Comment *c,* 396(c) (1958).

*Carpenter,* 108 S.Ct. at 321. Agency principles defined the duty of Defendant Winans to account for and render to his principal, *The Wall St. Journal,* profits made by the sale or use of confidential information. The unanimous Supreme Court concluded:

> We have little trouble in holding that the conspiracy here to trade on the Journal's confidential information is not outside the reach of the mail and wire fraud statutes provided the other elements of the offenses are satisfied.

*Id.* Unlike the view in *Holzer,* the Supreme Court in *Carpenter* did not see that it had to unreasonably conclude that the *Journal* must want its employees to misuse confidential information in order that it may claim by way of a constructive trust the profits made from trading stocks on the information. Defendant Winans appropriated the *Journal's* intangible property— the confidential information about the "Heard" column—and made a profit from its fraudulent use; Winans thus obtained from his illegal scheme both intangible and tangible property, and ownership of the

latter, the profits, is ascribed to the *Journal* by an agency law principle.

Defendant Walgren defrauded the State when he breached his duty of loyalty by accepting a bribe in the form of the clipping service. Agency principles establish Walgren's liability to the State for the value of the benefit he received. This conduct is not out of reach of the Mail Fraud Statute in view of the Supreme Court's analysis and elaboration of *McNally's* holding in *Carpenter*.

Because the conduct charged in the mail fraud count on which Defendant Walgren was convicted is within the reach of the Mail Fraud Statute, there has been no error of law or fact of a fundamental nature; the second element of the showing for a writ of error *coram nobis* is thus lacking.

Moving to the third element for *coram nobis* relief, continuing adverse consequences sufficient to overcome a mootness challenge, it is apparent that Defendant Walgren has failed to carry his burden.

## C.  INSUFFICIENT ADVERSE CONSEQUENCES

Of the several adverse consequences listed by Defendant Walgren (challenges for cause as a potential juror; denial of opportunity to be a notary public, or an executor of an estate; and impairment of his business relationships), the Magistrate concluded that only one overcame the mootness challenge for all the others would remain as long as any of the convictions remained. The one alleged adverse consequence that was persuasive to the Magistrate was that any future criminal conviction might result in a sentence enhanced by the number of his previous convictions. *Hirabayashi* followed the *"no* possibility of *any* collateral legal consequences" test from *Sibron v. New York,* 392 U.S. 40, 57, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968) where the Court determined that it had jurisdiction to hear Sibron's appeal even though he had completely served his six-month sentence for unlawful possession of heroin by the time the Court addressed the issues.

In *Hirabayashi* and *Sibron,* the Court reversed all charges; this would not be the case with Walgren where at least one felony conviction would remain. Moreover, a concurrent sentence was imposed by this Court on Walgren, treating the three counts as a single offense arising from a single course of conduct. Defendant Walgren may have been convicted of multiple counts, but he was convicted only on one indictment and received a concurrent sentence. Walgren's hint that he might be able to run for State elective office if a Travel Act conviction alone remained is not demonstrated with any authority or persuasive reasoning.

It is worth noting here the Government's argument that even if the Mail Fraud charge were vacated, the RICO conviction would still stand. The jury may have found that the two acts of racketeering were the Mail Fraud and Travel Act violations. It is essential to understand that the evidence of a bribery transaction established for Count XVII (Travel Act) is a different bribery transaction than that established under Count XXIV (Mail Fraud). The bribery transaction in the Mail Fraud count has been described. The transaction in the Travel Act count involved Walgren's efforts to elicit a bribe from the undercover agents in the form of an inflated price for his trucking company. The jury instructions on the Travel Act charge required a finding that the interstate travel facilitated bribery in violation of Washington law or extortion in violation of Federal law. Even if the jury found that the interstate travel facilitated federal extortion, a bribery offense is an inherent part of the finding: both involve the receipt of some benefit in return for some favor. Thus, the Travel Act violation itself embraces two crimes sufficient to form a basis for the RICO conviction.

Defendant Walgren has failed to demonstrate adverse consequences sufficient to overcome mootness and satisfy the case or controversy requirement of Article III of the U.S. Constitution.

Defendant Walgren having failed to show all the elements necessary in order to obtain the extraordinary writ of error *coram nobis,* his motion to vacate his Mail

Fraud and RICO convictions must be denied.

## II. NEW TRIAL UNAVAILABLE

█ While Defendant Walgren filed a Motion for a New Trial and was granted an open-ended continuance by the Court, the Defendant still had the responsibility to prosecute his motion diligently. Not only has the two-year filing deadline passed, but three years beyond the July 5, 1985 continuance date have accrued.

█ The Court may not address a new trial motion brought after such a delay, because its jurisdiction has lapsed just as it would have if, for example, a motion for reduction of sentence had not been brought within its filing period. The 120–day period for filing motions for reduction of sentence under Fed.R.Crim.P. 35 is jurisdictional, *United States v. Hetrick,* 644 F.2d 752 (9th Cir.1980), and the Court has only a "reasonable" time to rule, after which its jurisdiction will lapse. *See, e.g., United States v. Smith,* 650 F.2d 206, 208 (9th Cir.1981). It is fair to analogize from these cases to new trial motions under Fed.R. Crim.P. 33. Certainly the delay in this case is grossly excessive. Were the Court to find otherwise, it would be condoning the tactic described by the Government of filing a bare-bones motion for a new trial on the eve of the expiration of the time limit then attempting to build grounds to support the empty motion.

Additionally, the Court agrees with the Government that the defendant has woefully failed to carry his burden of proving the four factors necessary for a new trial as his "new evidence" appears merely to be a series of assertions about the evidence adduced at trial. He has shown neither that the "evidence" was newly discovered, material, would likely produce an acquittal, nor that his failure to learn of it earlier was due to no lack of diligence on his part.

The Motion for a new trial under Fed.R. Crim.P. 33 is dismissed for lack of jurisdiction.

## III. CONCLUSION

A writ of error *coram nobis* is unavailable to Defendant Walgren as he has failed to carry his burden on three of the four elements that provide the necessary foundation for such relief.

(1) No valid reason has been given for not attacking the conviction earlier: Defendant Walgren has neither shown that he raised the issue herein on appeal or that he had a valid and sufficient reason for not doing so. The U.S. Supreme Court has held that defendants may not collaterally attack convictions that under later Supreme Court precedent would have been invalid if they had not raised the issues on direct appeal that they sought to raise in their collateral attacks. This is so even if such an appeal appeared futile under the existing jurisprudence. The rationale for this rule is to lend finality to litigation, at least where the constitutional rights of the defendant or the jurisdiction of the trial court is not involved.

(2) There has been no fundamental error. Unlike the case cited for reversal of Defendant Walgren's Mail Fraud conviction, the conduct constituting the basis for Walgren's conviction amounts to a crime: bribery or extortion. Defendant Walgren received a clipping service in return for the use of his power to further the interests of the fictitious business that he believed was owned by an organized crime syndicate. In receiving the bribe, Defendant Walgren violated his duty of loyalty to the people of the State, and under agency principles is subject to a liability to deliver the bribe, its value, or its proceeds, to the principal. Thus, Defendant Walgren defrauded the people of the State of something of monetary value, and this crime is within the ambit of the Mail Fraud Statute.

(3) There are insufficient adverse consequences to Defendant Walgren to overcome the mootness challenge and satisfy the case or controversy requirement of Article III of the U.S. Constitution. At least one felony conviction would remain on Defendant Walgren's record. Moreover, Defendant Walgren received a concurrent sentence for his convictions on three counts,

504

essentially treating the multiple convictions as one. Thus, even if the Mail Fraud conviction no longer remained, the Travel Act conviction would be intact. Furthermore, even if the separately charged Mail Fraud and Travel Act counts constituted the basis for the RICO conviction, as the Travel Act conviction itself embraces two crimes, the RICO conviction also remains intact.

Having failed to carry his burden on three of the four required elements, a writ of error *coram nobis* is unavailable to Defendant Walgren.

Neither may defendant be granted a new trial as jurisdiction to address this motion has lapsed, and Defendant Walgren has made a wholly inadequate showing in any event.

Accordingly, Defendant Walgren's motions to vacate convictions and for a new trial are DENIED.

The Clerk of the Court shall send uncertified copies of this Order to the Honorable John L. Weinberg, United States Magistrate and counsel of record.