Mark Anthony STROUPE, Petitioner,

v.

UNITED STATES of America,
Respondent.

C.A. No. 2:03–894–PMD.

United States District Court,
D. South Carolina,
Charleston Division.

June 29, 2009.

Michael S. Seekings, Mullen Wylie, Charleston, SC, for Petitioner.

Michael Rhett Dehart, US Attorneys Office, Charleston, SC, for Respondent.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon Petitioner Mark Anthony Stroupe's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. The Government has filed a Response urging the court to deny Petitioner's Motion. Petitioner filed a Reply to the Government's Response. For the following reasons, the court denies Petitioner's § 2255 motion, and dismisses the action.

## BACKGROUND

From October 1997 through November 2000, Petitioner, d/b/a Practical Holdings Limited (PHL), received at least $8,329,055 from numerous investors to trade United States Treasury Bonds. In soliciting this capital, Petitioner promised high rates of return with little to no risk. In April 1998, the Federal Bureau of Investigations (FBI), the Internal Revenue Service (IRS), and the Securities and Exchange Commission (SEC) began a criminal investigation of Petitioner's investment activity. On July 24, 1998, pursuant to a court order, authorities seized Stroupe's various accounts due to suspected fraud.

On September 10, 2003, Petitioner and co-defendant Romeo Miles were indicted for 16 counts of conspiracy to commit wire fraud, wire fraud, and money laundering. On June 10, 2004, pursuant to a written plea agreement, Petitioner pled guilty to conspiracy to commit wire fraud, and the other counts of the indictment were dismissed. The plea agreement was negotiated on Petitioner's behalf by Stephen J. Goldberg ("Goldberg"), a Californian attorney admitted *pro hac vice* for the purposes of representing Petitioner. Local counsel in this matter, Michael S. Seekings ("Seekings"), represented Petitioner at the plea hearing.

At sentencing, the Government introduced numerous exhibits, including four contracts and an IRS accounting of Petitioner's bank accounts. Three of the contracts specified that United States Treasury bonds would be held in a trading account to act as a guarantee of the investors' funds, that such bonds would remain in the trading account "for the sole benefit of the Funder," and that the bonds would remain in the trading account at all times. Such representations were fraudulent because, when Petitioner's investment account was seized, there were no bonds in the account and there was only $944,692.55 in cash to secure $6.2 million in investments. The fourth contract that the Government introduced at sentencing was similar in nature, but the funds were to be secured by the investor's initial $1.4 million deposit with a guarantee that there

would be no diminution of value. The IRS accounting indicated that funds from the trading account had been siphoned off into various other bank accounts rather than being held as security for the investors' funds.

A Pre–Sentence Report was prepared, which calculated the guideline range at 46–57 months. On December 6, 2005, the Court sentenced Petitioner to 57 months imprisonment, 3 years supervised release, and ordered $3,838,348.05 in restitution. Goldberg was granted a motion to be relieved as counsel and, therefore, did not attend Petitioner's sentencing, even though he had negotiated the plea agreement. Seekings was denied a motion to be relieved as counsel and attended the hearing on Petitioner's behalf in an advisory capacity pursuant to Petitioner's motion to proceed *pro se.*

Petitioner filed a direct appeal of his conviction and sentence raising several issues. First, Petitioner argued that the Government breached the plea agreement by not allowing him to be debriefed, thus depriving him of the ability to benefit from a motion for downward departure. Second, he took issue with the Government's seeking sentencing enhancements that increased his total offense level beyond the stipulated level of nineteen. Third, Petitioner contended that his sentence should be evaluated as if it were imposed prior to *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), because he entered into the plea agreement and pled guilty prior to the Supreme Court's opinion in that case. Fourth, Petitioner challenged the factual basis for the offense level enhancements corresponding to the amount of loss, pursuant to *U.S. Sentencing Guideline Manual* ("USSG") § 2F1.1 (1998), and his leadership role in the offense, pursuant to USSG § 3B1.1(c). Finally, Petitioner argued that his sentence violated the Ex Post Facto Clause because he pled guilty prior to *Booker,* when the guidelines were applied as mandatory, and he was sentenced post-*Booker,* under the current advisory guidelines scheme. On September 13, 2006, the Fourth Circuit affirmed Petitioner's conviction.

On August 15, 2008, Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 raising the following grounds for relief:

1. The trial court lacked subject-matter jurisdiction because the statute of limitations expired before Petitioner was indicted.

2. Counsel was ineffective because Petitioner's attorneys failed to investigate the factual circumstances of the case thereby erroneously advising him that no statute of limitations defense would succeed.

3. Petitioner's guilty plea was not knowingly and voluntarily entered into because he did not understand the charges to which he pled. Specifically, Petitioner contends that he was unaware of any wrong-doing on the part of the co-defendants with whom he conspired and that at the plea hearing it was unclear to him as to whether awareness of such wrong-doing was an element of the crime.

4. Counsel was ineffective for failing to explain the *mens rea* elements of conspiracy to commit wire fraud, causing him to involuntarily and unknowingly plead guilty to that element of the crime.

5. IRS Agent Balser committed perjury before the Grand Jury on material matters warranting reversal of the conviction.

6. Petitioner's sentence is incorrect because the District Court failed to follow the requirements of Rule

32(c)(1) requiring it to address Petitioner's objections to the Pre–Sentence Report.

On November 10, 2008, the Government filed a Response requesting that the Court dismiss Petitioner's Motion. Petitioner filed a Reply on April 14, 2009.

## STANDARD OF REVIEW

### I. 28 U.S.C. § 2255

■ Petitioner proceeds under 28 U.S.C. § 2255, which provides, in relevant part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. On a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255, the petitioner bears the burden of proving the grounds for collateral attack by a preponderance of the evidence. *Miller v. United States,* 261 F.2d 546, 547 (4th Cir.1958). In deciding a § 2255 motion, the court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The court has thoroughly reviewed the motions, files, and records in this case and finds that no hearing is necessary.

### II. Summary Judgment

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *See Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990).

## DISCUSSION

### I. Statute of Limitations

■ In his first ground for relief, Petitioner contends that the statute of limitations for conspiracy to commit wire fraud tolled before he was indicted. Petitioner was indicted on September 10, 2003. Charges in the indictment indicate that Petitioner committed overt acts in furtherance of the conspiracy as late as November 28, 2000. Title 18, Section 3282 of the United States Code provides for a 5–year statute of limitations period to toll from the last identifiable act done in consummation of the purported conspiracy. 18 U.S.C. 3282; *See Fiswick v. U.S.,* 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946). Petitioner has at no point prior to this motion contested the factual allegations set forth in the indictment, and those factual allegations unquestionably place Petitioner's activities squarely within the statute of limitations.

In order to contest the facts of the indictment, Petitioner has attached a timeline of events as an exhibit to his § 2255 motion. Petitioner had all of the information necessary to create such a timeline at his disposal before the plea hearing. Nevertheless, no timeline was created, and no objection was ever raised. Petitioner was informed by counsel that no statute of limitations defense would succeed. This

serves as evidence of the fact that Petitioner and his attorneys contemplated the issue, but nevertheless dismissed it as a viable defense. Petitioner then proceeded to plead guilty to the offense, thereby accepting the factual allegations in the indictment. The Fourth Circuit has held that "[a] voluntary and intelligent guilty plea is an admission of all the elements of a formal criminal charge ... and constitutes an admission of all material facts alleged in the charge." *United States v. Willis,* 992 F.2d 489, 490 (4th Cir.1993); *United States v. McKoy,* 2007 WL 4124543, * 1 (D.S.C. Nov. 19, 2007). As will be discussed further in Part III of this Order, nothing in the record suggests that Petitioner's plea was involuntary or unintelligent. The plea colloquy and the thorough manner in which Petitioner has represented himself suggest that Petitioner was fully aware of the consequences of entering a guilty plea and sufficiently understood the nature of the charges leveled against him. Therefore, Petitioner has admitted "all material facts alleged in the charge," including those that place his overt acts within the statute of limitations. Accordingly, Petitioner's statute of limitations claim fails as a matter of law.

**II. Ineffective Assistance of Counsel in Regards to the Statute of Limitations**

In *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court held that the test for ineffective assistance of counsel announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) applies to guilty plea challenges based on ineffective assistance of counsel. Under *Strickland,* a meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Id.* at 687–98, 104 S.Ct. 2052. A court's evalu-

ation of counsel's performance under this standard must be "highly deferential," so as not to "second-guess" the performance. *Id.* at 689, 104 S.Ct. 2052. Furthermore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Fields v. Attorney General of Maryland,* 956 F.2d 1290, 1297–99 (4th Cir.1992); *Roach v. Martin,* 757 F.2d 1463, 1476 (4th Cir.1985). Concerning the second prong of *Strickland* as applied to guilty pleas, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366. Also, if the petitioner does not meet his burden of proving prejudice, then "a reviewing court need not consider the performance prong." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

Petitioner could not possibly have been prejudiced by counsel's failure to advise him of a statute of limitations defense because there was no effective statute of limitations defense. As previously stated, Petitioner had the opportunity to contest the factual allegations of the indictment before, during, and after his plea hearing. Neither Petitioner nor counsel believed, at the time of the hearing, that a statute of limitations defense had any merit, and Petitioner willingly pled guilty. The issue was not raised on direct appeal, even though the Fourth Circuit has power to entertain such a claim. Petitioner's prolonged silence implicitly indicates that Petitioner and his counselors believed that the jurisdictional conferring facts in the indictment were valid and had to be con-

ceded. In short, it appears that Petitioner's attorneys advised him correctly as to the statute of limitations. The record indicates that the Government was fully prepared to offer evidence of fraudulent transactions taking place within the statute of limitations. Disregard of counsels' advice would, ultimately, have proven to be of no consequence, and a petitioner cannot possibly suffer prejudice from the ineffective assistance of counsel where counsel provided correct advice on the contested issue. Accordingly, it cannot be said that Petitioner's counselors committed errors which, if not committed, would have convinced Petitioner to insist on going to trial. Petitioner has not suffered any prejudice as a result of his attorneys' advice stating that there was no available statute of limitations defense, and, therefore, Petitioner's claim fails as a matter of law.

### III. Validity of Petitioner's Guilty Plea

 In *Bousley v. U.S.*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), the Supreme Court stated:

We have strictly limited the circumstances under which a guilty plea may be attacked on collateral review. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson,* 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) (footnote omitted). And even the voluntariness and intelligence of à guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and " 'will not be allowed to do service for an appeal.' " *Reed v. Farley,* 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (quoting *Sunal v. Large,* 332 U.S. 174, 178, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947)). Indeed, "the concern with finality served by the limitation on collateral attack has special force

with respect to convictions based on guilty pleas." *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).

. . .

Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), or that he is "actually innocent," *Murray, supra,* at 496, 106 S.Ct. [2639]; *Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

*Bousley,* 523 U.S. at 621, 118 S.Ct. 1604. In *Bousley,* the defendant contested his sentence on appeal, but did not challenge the validity of his plea. *Id.* In his habeas petition, the defendant argued that his plea was not intelligent because the information provided by the district court at his plea colloquy was erroneous. The Court held that such a claim was procedurally barred on collateral review unless there was a showing of "cause" and "prejudice" or "actual innocence."

 In the case *sub judice,* Petitioner contested his sentence on appeal, but did not challenge the validity of his plea. Petitioner now alleges that his plea was neither intelligent nor voluntary because the information provided by the district court and his counselors was erroneous, i.e., that they failed to inform him correctly as to an element of conspiracy to commit wire fraud. Petitioner has made no attempt to show cause or actual prejudice to explain his failure to raise the validity of his plea on direct appeal, and he has not made a persuasive showing of actual innocence.

 In order to establish "actual innocence," Petitioner must show that " 'in

light of all the evidence,' " "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo,* 513 U.S. 298, 327–328, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U. Chi. L.Rev. 142, 160 (1970)). Petitioner contends that he is actually innocent of conspiracy to commit wire fraud because he was unaware of any wrong-doing committed by the co-defendants, and that such awareness is an element of the crime. The elements of the offense, however, are: (1) an agreement to commit fraud by means of wire in interstate commerce; (2) willing participation by the defendant in the agreement; and (3) an overt act by one of the defendants in furtherance of the agreement.

The inescapable facts of Petitioner's case are that the District Court reviewed the indictment, which explicitly listed all elements of the conspiracy charge, and how the factual allegations in question satisfied those elements. After reviewing this document, Petitioner signed the plea agreement. *See* Stroupe Guilty Plea at 7–13. Furthermore, at his plea hearing, this Court reviewed the elements of the conspiracy charge, and the factual allegations against him which satisfied that charge, to Petitioner before he was allowed to enter his guilty plea. After hearing this, Petitioner knowingly and voluntarily pled guilty to the charge.

This Court also cannot excuse Petitioner's failure to raise the validity of his plea on direct appeal where neither cause, prejudice, nor actual innocence are shown. Given the importance of judicial finality and the absence of any proof of procedural unfairness, the Court therefore dismisses the claim as procedurally defaulted.

 Even if the claim were not procedurally defaulted, however, Petitioner has failed to show how his plea was involuntary and unintelligent. The Fourth circuit has previously stated:

> Prior to accepting a guilty plea, a trial court, through colloquy with the defendant, must inform the defendant of, and determine that he understands, the nature of the charge(s) to which the plea is offered, any mandatory minimum penalty, the maximum possible penalty and various rights. Fed.R.Crim.P. 11(c)(1).
>
> . . .
>
> In reviewing the adequacy of compliance with Rule 11, this Court should accord deference to the trial court's decision as to how best to conduct the mandated colloquy with the defendant. "The manner of ensuring that the defendant is properly informed is committed to the good judgment of the district court, to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence." *United States v. Reckmeyer,* 786 F.2d 1216, 1221 (4th Cir.), *cert. denied,* 479 U.S. 850, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986).

*United States v. DeFusco,* 949 F.2d 114, 116–17 (4th Cir.1991). The evidence before the Court convincingly shows that Petitioner understood the charges against him and accepted responsibility for his actions. The plea colloquy in the case sub judice was conducted in conformity with Rule 11 and was sufficient to establish that Petitioner voluntarily and intelligently understood the charges against him and pled guilty to conspiracy to commit wire fraud. The plea agreement, which Petitioner admittedly read and signed, set forth the elements and maximum sentence of the offense. The indictment, which Petitioner also received and read, set forth the factual allegations for which he was being charged. When asked at sentencing, Petitioner stated that he did not wish to withdraw his guilty plea. Also, Petitioner sub-

mitted a motion to proceed pro se prior to his sentencing hearing, explicitly stating that he understood the charge, the maximum sentence, his right to representation, and the limited role of advisory counsel once permitted to proceed *pro se.* Petitioner cannot subsequently attack the validity of his plea and sentence on the basis of his knowledge after persuasively setting forth reasons which convinced the court to conclude that he was competent to represent himself.

The *Fourth Circuit* has also made it abundantly clear that one need not understand every aspect of the charge in order to validly plead guilty, stating:

> The question that really matters, however, and the one that appears to have escaped so many courts in the pursuit of pure procedural perfection, is whether appellant believed, at the time of the taking of his plea, that there was a substantial risk that a jury could find that he possessed the requisite intent. A defendant, in pleading guilty, does not have to believe that he committed all of the acts and possessed the statutorily-prescribed intent for the crime charged. The purpose of the plea hearing is to guarantee that the defendant understands the nature of the charges against him so that he can knowingly and voluntarily agree to plead guilty, rather than face the risk of a reasonable jury finding that he possessed the necessary "mens rea" and committed the "actus reus."
>
> . . .
>
> An individual accused of crime may voluntarily, knowingly, and understandably consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

*United States v. Wilson,* 81 F.3d 1300, 1309 (4th Cir.1996). The record before the Court demonstrates that Petitioner voluntarily, knowingly, and understand-ably consented to the imposition of a prison sentence not to exceed 5 years for having committed overt acts of fraud and conspiracy. Petitioner exhibits a degree of intelligence, education, sophistication, and competence that makes it untenable to conclude that he simply did not know what he was doing when he pled guilty. Accordingly, the Court dismisses this claim.

## IV. Ineffective Assistance of Counsel for Failing to Adequately Explain the Elements of Conspiracy to Commit Wire Fraud

This issue requires the application of the *Strickland* test as elaborated earlier in this Order. Petitioner must show that his attorneys' performance fell below reasonable standards of professionalism, and that he was prejudiced by their advice. Petitioner has failed to show how he was prejudiced by their failure to adequately explain the elements of conspiracy to commit wire fraud. Petitioner was given enough information to voluntarily and intelligently plead guilty to conspiracy to commit wire fraud. Petitioner did not need to have perfect legal advice in order to understand the nature of the charges against him or the consequences of pleading guilty to them. The charge rested primarily upon Petitioner's own overtly fraudulent acts, rather than awareness of a co-conspirator's behavior. Petitioner understood this much at his plea and sentencing hearings, and such understanding is sufficient to find that Petitioner would have plead guilty, even if counsel had advised him in accordance with the arguments made in his § 2255 motion.

Petitioner's lawyers did not advise him erroneously by stating that he could be charged with conspiracy to commit wire fraud based on his own fraudulent acts. 18 U.S.C. § 1343 states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud,

or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 371 states:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

The elements of the crime were set out in the plea agreement as follows: (1) an agreement to commit fraud by means of wire in interstate commerce; (2) willing participation by the defendant in the agreement; and (3) an overt act by one of the defendants in furtherance of the agreement. The statutes and stated elements do not include awareness of a co-conspirator's wrong-doing as an element of the crime, only the agreement of a common illicit goal between co-conspirators. In other words, overt acts by multiple parties, and awareness of each party of the overt acts of the other parties, is unnecessary. The allegations set forth in the indictment were sufficient to satisfy the elements of the crime, and Petitioner's awareness of the co-conspirators' behavior is simply irrelevant to the charge where Petitioner himself committed overt acts of fraud. The Government based their indictment upon this premise, and Petitioner conceded this much by pleading guilty. Awareness would have been a central component had Petitioner not made fraudulent representations to parties with whom he directly contracted. However, Petitioner's overtly fraudulent acts, to which he has admitted, rendered that component unnecessary for a conviction, and Petitioner's attorneys advised him correctly. Petitioner was not prejudiced by the correct advice of his attorneys. Accordingly, Petitioner's claim is dismissed.

## V. Whether IRS Agent Balser Committed Perjury Before the Grand Jury

 Petitioner further argues that IRS Agent Balser ("Balser") committed perjury before the Grand Jury by lying about the quantity of documents reviewed as part of the criminal investigation and by defining certain investment vehicles incorrectly. Petitioner's indictment, plea, and sentencing were based primarily on fraudulent representations that he made in eight contracts. Balser, however, testified before the Grand Jury that he had reviewed over two thousand documents as part of the investigation of Petitioner, and he stated that all of the documents were "virtually identical," at least in regards to the representation that investment proceeds would be guaranteed by funds held in a designated trading account.

 Petitioner bases his argument primarily upon the quantitative discrepancy between the number of documents reviewed during investigation and the number of documents upon which the Government based its indictment. The Government has stated, however, that it limited the number of contracts that it would use in the indictment and during the plea and sentencing hearings in order to simplify the case. Petitioner has not produced evidence showing that Balser's statements were false or that he did not, in fact, review thousands of documents during the course of his investigation. The mere fact that the Government limit-

ed the scope of the proceedings by relying on a few contracts, rather than hundreds, does not necessarily cast any doubt upon Balser's statements. Petitioner must present much more evidence if he wishes to succeed on his perjury claim. Furthermore, Petitioner ignores the fact that he eventually pled guilty. If Petitioner honestly believed that the indictment was based upon the lies of Agent Balser, he was entitled to a trial, where he could have tested the merits of such an argument and the credibility of his accusers. Petitioner's plea acts as an acceptance of their credibility, and collateral review of the matter is simply an inappropriate forum to review Petitioner's willing acceptance of the charges.

In the case of *Sunal v. Large*, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947), the Supreme Court said:

> It is plain, however, that the writ (of habeas corpus) is not designed for collateral review of errors of law committed by the trial court-the existence of any evidence to support the conviction, irregularities in the grand jury procedure, departure from a statutory grant of time in which to prepare for trial, and other errors in trial procedure which do not cross the jurisdictional line. Yet the latter rule is not an absolute one; and the situations in which habeas corpus has done service for an appeal are the exceptions.
>
> . . .
>
> [T]he rule which requires resort to appellate procedure for the correction of errors 'is not one defining power but one which relates to the appropriate exercise of power.' That rule is, therefore, 'not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'

*Sunal,* 332 U.S. at 180, 67 S.Ct. 1588 (quoting *Bowen v. Johnston,* 306 U.S. 19,

27, 59 S.Ct. 442, 83 L.Ed. 455 (1939)); *See also Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (stating that habeas review "will not be allowed to do service for an appeal").

Petitioner has failed to show any exceptional circumstances requiring him to bring a perjury claim before this Court on habeas review. The claim is procedurally defaulted and is, therefore, dismissed.

## VI. Whether the District Court Complied with Rule 32(c)(1) in Addressing Petitioner's Objections to the Pre-Sentence Report

■ Rule 32 of the Federal Rules of Criminal Procedure provides a framework for the preparation and use of a pre-sentence report ("PSR"). The defendant is entitled to a copy of the PSR in advance of sentencing, and he has the right to file objections. The sentencing court must rule on controverted matters. Rule 32(i)(3)(B). Finally, the court "must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons." Rule 32(i)(3)(C).

Petitioner contends that he is entitled to relief because the sentencing judge failed to address his objections to the PSR. Petitioner is not entitled to such relief, however, because the claim is procedurally defaulted as a result of his failure to raise the claim on direct appeal. *See United States v. Emanuel,* 869 F.2d 795, 796 (4th Cir.1989) (holding that a Rule 32(c)(3)(D) claim was procedurally defaulted when not raised on direct appeal). The Court sees no reason to decline to extend that holding to the case *sub judice.* Petitioner has waived the claim, and he is therefore not being held "in violation of the . . . laws of the United States." 28 U.S.C. § 2255. Therefore, the claim is dismissed.

## CONCLUSION

It is, therefore, **ORDERED,** for the foregoing reasons that Stroupe's § 2255 petition is **DISMISSED.**

**AND IT IS SO ORDERED.**